VIVIANO, J.
At issue in this case is whether plaintiff, Ronnisch Construction Group, Inc. (RCG), can seek attorney fees under § 118(2), MCL 570.1118(2), of the Construction Lien Act (CLA) from defendant Lofts on the Nine, LLC (LOTN),[1] given that plaintiff received a favorable arbitration award on its related breach of contract claim but did not obtain a judgment on its construction lien claim. We hold that the trial court may award attorney fees to RCG because RCG was a lien claimant who prevailed in an action to enforce a construction lien through foreclosure. Therefore, we affirm the judgment of the Court of Appeals and remand to the trial court for further proceedings not inconsistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
On May 25, 2007, RCG entered into a construction contract with LOTN to construct a condominium building. RCG last provided labor and materials on April 24, 2009. LOTN withheld payment of a portion of the contract amount, maintaining that RCG breached the contract by providing defective construction, dishonestly charging LOTN, and failing to complete the project on time. On June 2, 2009, RCG recorded its Claim of *550 Lien, claiming ■ a construction lien in the amount of $626,163.73, subject to interest on late payments in accordance with the contract. RCG also filed a notice of lis pendens against the subject property.
On November 25, 2009, RCG filed this suit against LOTN, seeking foreclosure of the lien and raising claims for breach of contract and unjust enrichment.[2] RCG sought a judgment in the amount of $626,163.73, together with interest, costs, and attorney fees. However, the parties agreed to stay the proceedings to pursue contractually mandated arbitration. Following arbitration, the arbitrator awarded $636,058.72 to RCG and awarded $185,238.36 to LOTN on its recoupment defense and counterclaims, resulting in a net award of $450,820.36 in RCG’s favor. The arbitrator did not address RCG’s claim for attorney fees and costs and instead reserved the issue for the trial court.
A few weeks later, LOTN paid the arbitration award in full. Thereafter, RCG filed a motion requesting that the trial court lift the stay of proceedings, confirm the arbitration award, and award RCG its actual attorney fees and costs under § 118(2). The trial court denied RCG’s motion, determining that RCG’s lien foreclosure claim had not been adjudicated by the arbitrator or the trial court and that RCG’s lien was satisfied when it voluntarily accepted LOTN’s tender of payment. Thus, the trial court held that RCG was not a prevailing lien claimant under the CLA, a necessary predicate to the recovery of attorney fees under § 118(2), and that the court therefore did not have the discretion to award attorney fees to RCG.
On appeal, the Court of Appeals vacated the portion of the trial court’s order denying RCG’s request for attorney fees and remanded for further *551 proceedings.[3] The Court of Appeals held that, having brought both a contract claim and a foreclosure of lien claim, the fact that RCG “substantially prevail[ed] on the amounts it sought under the claim of lien made it a prevailing party” under the CLA.[4] The Court of Appeals also distingushed this Court’s order in HA Smith Lumber & Hardware Co v Decina,[5] noting that, unlike the instant case, the subcontractors in Decina did not prevail on their lien claims because their liens could not legally attach to the property.[6] Accordingly, the Court of Appeals concluded that the trial court had discretion under § 118(2) to award attorney fees.[7]
LOTN sought leave to appeal in this Court. We granted leave to appeal, asking the parties to address:
whether the Court of Appeals erred in holding that the plaintiff contractor, who filed a claim of lien under the Construction Lien Act (CLA), MCL 570.1101 et seq., and then filed a circuit court action against the defendant property owner, alleging breach of contract, foreclosure of lien, and unjust enrichment claims, was entitled to an award of attorney fees as a “prevailing party” under MCL 570.1118(2), when the plaintiff prevailed in binding arbitration on its contract claim, but neither the arbitrator nor the circuit court resolved the plaintiffs foreclosure of lien claim. See HA Smith Lumber & Hardware Co v Decina, 480 Mich 987 (2007).[8]
II. STANDARD OF REVIEW
We review a trial court’s award of attorney fees and *552 costs for an abuse of discretion.[9] An abuse of discretion occurs when the trial court’s decision is outside the range of reasonable and principled outcomes.[10] A trial court necessarily abuses its discretion when it makes an error of law.[11]
Questions of statutory interpretation are reviewed de novo.[12] In interpreting § 118(2), our goal is to give effect to the Legislature’s intent, focusing first on the statute’s plain language.[13] In doing so, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme.[14] When a statute’s language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.[15]
III. ANALYSIS
The CLA is “intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs.”[16] The fundamental purpose of the CLA with respect to contractors, workers, and suppliers is to provide a method to secure payment for their labor and *553 materials.[17] The Legislature has declared that the CLA is “a remedial statute . . . [that] shall be liberally construed to secure the beneficial results, intents, and purposes of th[e] act.”[18] Accordingly, when interpreting the CLA, we should always be mindful of the CLA’s intended purpose.[19]
In this case, RCG sued to recover the unpaid amount on its contract and, after receiving a favorable arbitration award, sought attorney fees under § 118(2) of the CLA, which reads in pertinent part:
In an action to enforce a construction lien through foreclosure, the court shall examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities. The court may allow reasonable attorneys’ fees to a lien *554 claimant who is the prevailing party.[20]
Application of § 118(2) in this case requires us to determine whether RCG was (1) a lien claimant, (2) in an action to enforce a construction lien through foreclosure, (3) who was the prevailing party.
A. RCG WAS A LIEN CLAIMANT
The first inquiry in determining whether a party may seek attorney fees under the CLA is whether the party is a lien claimant. Under § 118(2), the trial court has discretion to award attorney fees to “a lien claimant who is the prevailing party.” The CLA defines a “lien claimant” as “a person having a right to a construction lien under [the] act.”[21] RCG had a valid claim of lien that attached to LOTN’s interest in the property.[22] Further, it is undisputed that LOTN did not tender full payment to RCG on the contract amount before the arbitration award. Therefore, when RCG *555 received its arbitration award, it was a lien claimant because it possessed “a right to a construction lien” under the CLA.[23]
Our conclusion that RCG was a lien claimant makes the instant case distinguishable from this Court’s order in Decina. LOTN’s argument that Decina controls the outcome of this case overlooks the crucial distinction between the two—RCG was a lien claimant under § 118(2) when it received a favorable determination on its contract claim, whereas the subcontractors in Decina were not.
The litigation in Decina stemmed from a construction contract dispute between homeowners, their general contractor, and two subcontractors.[24] The dispute arose after the homeowners withheld final payment to the general contractor and after the general contractor did not pay the subcontractors for the labor and materials they provided.[25] Pertinent to this case, the subcontrac *556 tors brought lien foreclosure claims against the homeowners and breach of contract claims against the general contractor.[26]
Following a bench trial, the trial court ruled that the homeowners had paid the entire contract amount to the general contractor and that the subcontractors’ liens therefore did not attach to the property because the homeowners had paid the contract amount in full.[27] But the trial court ruled in favor of the subcontractors on their breach of contract claims and subsequently ordered the general contractor to pay their attorney fees.[28] The Court of Appeals affirmed, holding that the subcontractors were a prevailing party because they had prevailed on “a claim brought in the alternative for the same injury or loss raised in the CLA claim.”[29]
This Court reversed by order and vacated the trial court’s order granting attorney fees. This Court stated that to be a “prevailing party” under § 118(2), the party “must prevail on the lien foreclosure action.”[30] This Court then held that the subcontractors lost on their lien claim and therefore could not recover attorney fees, stating:
In this case, the unpaid subcontractors filed a lien foreclosure action against the property owners and a breach of contract action against the general contractor. The sub *557 contractors lost on their lien claim but prevailed on the breach of contract claim. While the statute allows a lien claimant to bring an underlying contract action at the same time as the lien foreclosure action, it does not preclude the option of bringing the two actions separately. MCL 570.1117(5). If the subcontractors had chosen to bring their breach of contract claims against the general contractor as a separate action, they would not have been allowed to recover attorney fees. The language of MCL 570.1118(2) does not permit recovery of attorney fees on the contract action merely because it was brought together with the lien foreclosure action.[31]
As noted earlier, the crucial distinction between Decina and the instant case is that the subcontractors in Decina were not lien claimants. In Decina, the trial court found that the homeowners had paid the entire contract amount owed to the general contractor.[32] The homeowners’ tender of full payment extinguished the subcontractors’ right to a construction lien under the CLA.[33] Accordingly, this Court rightly acknowledged that the subcontractors lost on their lien claims.[34] Therefore, the Decina subcontractors no longer had “a right to a construction lien under [the CLA]” and thus could no longer be considered “lien claimants.”[36] The rule that emerges from Decina is simple—a party cannot lose on its lien claim and receive attorney fees under § 118(2). As a result, the subcontractors in Decina could not seek attorney fees under § 118(2) *558 because fees under that section may only be awarded to “a lien claimant who is the prevailing party.”[36]
Accordingly, Decina does not control the outcome of this case. In contrast to the subcontractors in Decina, RCG was a lien claimant when it received its arbitration award because it possessed “a right to a construction lien” under the CLA.[37]
B. BCG BROUGHT AN ACTION TO ENFORCE A CONSTRUCTION LIEN THROUGH FORECLOSURE
We next turn to whether RCG was the prevailing party in an action to enforce a construction lien through foreclosure when its lien claim was not adjudicated but it prevailed on its related contract claim. We conclude that the plain language of § 118(2) does not expressly limit the trial court’s ability to award attorney fees to a lien claimant who is the prevailing party on the lien claim. Rather, reading the statute as a whole makes clear that a “lien claimant who is the prevailing party” may seek attorney fees “[i]n an action to enforce a construction lien through foreclosure . . . .”[38]
The language of § 118(2) indicates that the Legislature was aware that an action to enforce a construction lien through foreclosure may involve multiple, separate claims. The first sentence of § 118(2) reads, “In an action to enforce a construction lien through foreclosure, the court shall examine each claim and defense *559 that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities.”[39] We presume the Legislature knew the meaning of the words it used when drafting this provision.[40] And, here, the Legislature used the terms “action” and “claim” in the same sentence. An “action” is “[a] civil or criminal judicial proceeding.”[41] “A party bringing an ‘action’ seeks to recover from the opposing party . . . .”[42] On the other hand, “a claim consists of facts giving rise to a right asserted in a judicial proceeding, which is an action. In other words, the action encompasses the claims asserted.”[43] Accordingly, in § 118(2), the phrase “action to enforce a construction lien through foreclosure” refers to a civil judicial proceeding in which foreclosure of a construction lien is sought, and it is comprised of all the claims asserted in the action, *560 including any related claim for breach of contract.[44] By beginning with the phrase “[i]n an action to enforce a construction lien through foreclosure,” § 118(2) establishes that the focus is on whether the lien claimant is a prevailing party in the action (i.e., the entirety of the judicial proceeding) in which the lien foreclosure claim was asserted.[45]
There is no indication from the language of § 118(2) that the lien claimant must receive a judgment on its foreclosure claim for it to be the prevailing party. The Legislature directed the trial court to “examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant. . . ,”[46] Consistent with this directive, a lien claimant in such an *561 action might prevail on its related breach of contract claim and receive the entire amount to which it is entitled under its lien claim. In that scenario, the lien claimant would have prevailed in its action to enforce the construction lien despite not winning its specific lien foreclosure claim and, thus, would be entitled to attorney fees under § 118(2).[47]
Under Michigan law, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related. A contract is a necessary prerequisite to a construction lien.[48] A construction lien stems from the underlying contract,[49] and its amount is determined by the contract’s terms.[50] These principles are reflected throughout the CLA.[51] In essence, “[t]he lien is but a means for enforcing the payment of the debt arising *562 from the performance of the contract. . . ,”[52] A party may proceed to enforce its lien through foreclosure while simultaneously seeking recovery based on the contract from which the lien arose.[53] But there can only be one satisfaction.[54] Thus, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related, and allowing a party to pursue both “merely gives it a better chance of recovering what it is owed.”[55]
In the instant case, RCG filed a complaint alleging claims for breach of contract and foreclosure of its lien. Because these claims are integrally related, if RCG is able to establish that it prevailed on its breach of contract claim, it will have prevailed in its “action to enforce a construction lien through foreclosure . . . .”[56]
C. RCG WAS A PREVAILING PARTY
Having determined that RCG was a lien claimant in an action to enforce a construction lien through foreclosure, we must finally determine whether RCG was the prevailing party given that it received a net arbitration award of $450,820.36 in its favor.[57]
*563 Neither the CLA nor Decina define the term “prevailing party”; however, as a legal term of art, it must be construed and understood according to its peculiar and appropriate meaning.[58] A “prevailing party” is “[t]he party to a suit who successfully prosecutes the action . . . , prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered.”[59] For there to be a “prevailing party,” there must have been a material and enforceable alteration of the legal relationship of the parties resulting from judicial imprimatur.[60]
In this case, RCG received an award on its contract claim pursuant to a final and binding arbitration. This award constituted a conclusive determination of the rights and obligations of the parties.[61] That is, the arbitration produced an enforceable award that altered the legal relationship of the parties. Moreover, through the arbitration award, RCG prevailed on the main issue in the action, i.e., it obtained an enforceable award compensating it for its labor and materials.[62] Under the CLA, a lien claimant becomes the prevailing *564 party when the rights and obligations of the parties that are at the heart of its lien claim are conclusively determined in its favor. RCG’s contract and lien foreclosure claims both sought to obtain payment for the labor and materials supplied by RCG, and both claims necessarily required determinations to be made regarding the parties’ rights and obligations stemming from the underlying contract.[63] By prevailing on one of those claims—the contract claim—RCG successfully prosecuted the action, receiving the requisite conclusive determination and thereby prevailing on its main issue.[64]
Further, that the trial court never entered a judgment confirming the arbitration award does not preclude us from determining that RCG was the prevailing party. The lack of judicial imprimatur in RCG’s *565 favor is a direct result of the trial court’s failure to confirm RCG’s arbitration award upon its motion.[65] Contrary to the trial court’s conclusion, LOTN’s payment of the arbitration award did not obviate the need to confirm the award. In certain circumstances, confirmation may be necessary even if the award has been satisfied. For instance, the winning party at arbitration may desire to seek costs.[66] Or, as in the instant case, a party may wish to seek attorney fees. Although Michigan courts have not spoken on the issue, we agree with a number of other courts that a party cannot avoid confirmation by paying an arbitration award before the confirmation proceeding.[67] Therefore, LOTN’s payment of the arbitration award should not *566 have precluded the trial court from providing the necessary judicial imprimatur in this case by confirming the award.[68]
Finally, we disagree with the dissent’s interpretation of the statute, which would require RCG to refuse the proffered payment and continue to litigate its foreclosure claim to remain eligible to seek attorney fees under § 118(2). Such a conclusion would encourage gamesmanship by defendants, allowing them to prolong litigation and delay payment on the contract claim in an attempt to drain the lien claimant’s resources before it can obtain a judgment on its lien claim and seek attorney fees.[69] It also directly contravenes this Court’s policy of encouraging settlements and discouraging litigation.[70] Therefore, we instead conclude that RCG’s acceptance of payment did not preclude it from *567 seeking attorney fees.[71]
We hold that RCG was entitled to seek attorney fees under the CLA because it prevailed on the main issue in its construction lien action when it received a favorable arbitration award on its contract claim. The arbitration award constituted a conclusive and enforceable determination of the rights and obligations of the parties that were at the heart of RCG’s lien claim. Therefore, RCG was the prevailing party in its action to enforce a construction lien through foreclosure.[72]
IV. CONCLUSION
We hold that the trial court may award attorney fees to RCG because it was a lien claimant who was the prevailing party in an action to enforce a construction lien through foreclosure by virtue of receiving a favorable arbitration award on its breach of contract claim. The judgment of the Court of Appeals is affirmed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.[73]
*568 MaRKMán, McCormack, and Bernstein, JJ., concurred with Viviano, J.

 MCL 570.1101 et seq. Before enactment of the CLA in 1980, its predecessor, the Mechanics’ Lien Act, former MCL 570.1 et seq., governed construction liens in Michigan.

 RCG’s unjust enrichment claim is not at issue in this appeal.

 Ronnisch Constr Group, Inc v Lofts on the Nine, LLC, 306 Mich App 203, 214; 854 NW2d 744 (2014).

 Id. at 211.

 H A Smith Lumber & Hardware Co v Decina, 480 Mich 987 (2007).

 Ronnisch, 306 Mich App at 213.

 Id. at 211.

 Ronnisch Constr Group, Inc v Lofts on the Nine, LLC, 497 Mich 1003 (2015).

 Moore v Secura Ins, 482 Mich 507, 516; 759 NW2d 833 (2008).

 Id.

 People v Duncan, 494 Mich 713, 723; 835 NW2d 399 (2013).

 Madugula v Taub, 496 Mich 685, 695; 853 NW2d 75 (2014).

 Id. at 696.

 Id.

 Id.

 Vugterveen Sys, Inc v Olde Millpond Corp, 454 Mich 119, 121; 560 NW2d 43 (1997); see also 1980 PA 497, title (stating that the CLA is an act “to establish, protect, and enforce by lien the rights of persons performing labor or providing material or equipment for the improvement of real property”).

 See Smalley v Gearing, 121 Mich 190, 198; 79 NW 1114 (1899) (stating that the Mechanics’ Lien Act “provide[d] a method for securing payment to those whose labor or material goes into the building . . . ”). That the CLA is designed to protect the interests of such parties is further supported by the substantial-compliance provision contained in the act. See MCL 570.1302(1).

 MCL 570.1302(1). This provision, like its predecessor in the Mechanics’ Lien Act, former MCL 570.27, codifies the longstanding principle that construction lien statutes must be liberally construed to effectuate their purpose. See Scales v Griffin, 2 Doug 54, 59 (Mich, 1845). We agree with the dissent that a “provision requiring that a statute be liberally construed ‘should be regarded as requiring a fair interpretation as opposed to a strict or crabbed one—which is what courts are supposed to provide anyway.’ ” Post at 572 n 12, quoting Scalia & Garner, Reading Law: The Interpretation of Legal Texts (St Paul: Thomson/West, 2012), p 233. We disagree that merely citing such a directive—like the dissent’s author did recently in Associated Builders & Contractors v Lansing, 499 Mich 177; 880 NW2d 765 (2016)— implies otherwise. Notably, it is this very principle—fairly interpreting the text of the statute at issue—that impels us to reject the dissent’s “crabbed” interpretation of the statute.

 Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park, 400 Mich 184, 188; 253 NW2d 646 (1977).

 Additionally, the statute provides that a court may allow reasonable attorney fees to a prevailing defendant if the court determines that the lien claimant’s action to enforce a construction lien was vexatious. MCL 570.1118(2).

 MCL 570.1105(2).

 RCG’s construction lien on LOTN’s interest in the condominium building arose once it made improvements to the condominium building. MCL 570.1107(1). That lien attached to LOTN’s entire interest. MCL 570.1107(2). RCG properly filed its claim of lien in the amount of $626,163.73 within 90 days after it last furnished labor or material, and its lien was properly recorded on June 2, 2009. See MCL 570.1111(1). Therefore, we agree with the trial court’s determination that RCG perfected its hen. However, if a lien claim has not been adjudicated when a dispositive ruling on the underlying contract claim is made, and questions regarding the validity of a plaintiffs lien remain, they can be resolved in conjunction with a motion to award attorney fees. The plaintiff then would still have the burden to prove the validity of the lien. See Skyhook Lift-Slab Corp v Huron Towers, Inc, 369 Mich 36, 39; 118 NW2d 961 (1963) (stating that the plaintiff bears the burden of demonstrating compliance with the statutory requirements necessary for a *555 lien claim); In re Eddy Estate, 354 Mich 334, 348; 92 NW2d 458 (1958) (recognizing that the party seeking attorney fees bears the burden of proving entitlement to those fees).

 MCL 570.1105(2). The fact that RCG was not determined to be a lien claimant before the arbitration award is not dispositive. Instead, the material inquiry is whether RCG, as the party seeking fees, was a lien claimant under the CLA when it became the prevailing party by virtue of the arbitration award in its favor. Contrary to the dissent’s view, we do not believe that whether RCG was a lien claimant at that critical moment is contingent on a prior or contemporaneous judicial determination that it had a right to a lien. It is ironic that in an opinion that claims a monopoly on the statutory text, the dissent hinges its analysis on a requirement that is nowhere to be found in the text of the CLA. See MCL 570.1105(2) (defining “lien claimant” as “a person having a right to a construction lien under this act”).

 H A Smith Lumber & Hardware Co v Decina, 258 Mich App 419, 421-422; 670 NW2d 729 (2003), vacated in part 471 Mich 925 (2004). The subcontractors contracted with the general contractor to provide materials and labor. Decina, 258 Mich App at 422.

 Id.

 Id. at 423. Although the subcontractors did not contract with the homeowners directly, they were nevertheless at least initially entitled to a construction lien under the CLA. See MCL 570.1107(1) (“Each.. . subcontractor . .. who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to real property .. ..”).

 H A Smith Lumber & Hardware Co v Decina (On Remand), 265 Mich App 380, 382; 695 NW2d 347 (2005), rev’d 480 Mich 987 (2007).

 Id.

 Id. at 384-385.

 Decina, 480 Mich at 988.

 id.

 Decina, 258 Mich App at 424, 431.

 See MCL 570.1107(1) and (6); see also Vugterveen, 454 Mich at 129 (recognizing that MCL 570.1107(6) provides a real property owner with a defense to a claim of lien if the owner can show that the sum of payments made pursuant to the specific contract plus the claim of lien exceed the price of the contract).

 Decina, 480 Mich at 988.

 MCL 570.1105(2).

 MCL 570.1118(2) (emphasis added). Accordingly, this Court correctly recognized that § 118(2) did “not permit recovery of attorney fees on the contract action merely because it was brought together with the lien foreclosure action.” Decina, 480 Mich at 988. Put simply, bringing lien foreclosure and contract claims in the same action did not allow the Decina subcontractors to evade the lien claimant requirement.

 MCL 570.1105(2).

 MCL 570.1118(2).

 Emphasis added. The Legislature’s understanding that separate claims could be brought in the foreclosure action is also reflected elsewhere in the CLA. See MCL 570.1117(5) (“In connection with an action for foreclosure of a construction lien, the lien claimant also may maintain an action on any contract from which the lien arose.”).

 Auditor General v McLaulin, 83 Mich 352, 354; 47 NW 233 (1890).

 Black’s Law Dictionary (10th ed). To understand the meaning of words in a statute that are not otherwise defined, we may resort to dictionary definitions for guidance. People v Jones, 467 Mich 301, 304; 651 NW2d 906 (2002). Because the terms at issue in this case have a peculiar legal meaning, it is appropriate to consult a legal dictionary. Id. at 304-305. See also MCL 8.3a.

 Epps v 4 Quarters Restoration LLC, 498 Mich 518, 530; 872 NW2d 412 (2015).

 CAM Constr v Lake Edgewood Condo Ass’n, 465 Mich 549, 555; 640 NW2d 256 (2002). Black’s Law Dictionary (10th ed) defines “claim” as:
1. A statement that something yet to be proved is true .... 2. The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional.... 3. A demand for money, property, or a legal remedy to which one asserts a right; [especially], the part of a complaint in a civil action specifying what relief the plaintiff asks for.

 Some of the confusion underlying the proper interpretation of § 118(2) may stem from the fact that “action” and “cause of action,” i.e., a claim, are often used synonymously, although they do not strictly and technically have the same meaning. Otto v Village of Highland Park, 204 Mich 74, 80; 169 NW 904 (1918). For instance, in MCL 570.1117(5), the Legislature used “action” to refer both to a judicial proceeding and to a claim that may be asserted within that proceeding. In such circumstances, we must be careful to look for contextual clues in discerning the meaning of the words in the statute.
In Decina, this Court correctly noted that under § 118(2), the party must prevail on the lien foreclosure action which, under the plain language of § 118(2), refers to a judicial proceeding. But, perhaps influenced by the inartful drafting of the CLA, the Decina Court also used the terms “action” and “claim” interchangeably. See, e.g., Decina, 480 Mich at 988 (“The subcontractors lost on their lien claim but prevailed on the breach of contract claim. While the statute allows a lien claimant to bring an underlying contract action at the same time as the lien foreclosure action, it does not preclude the option of bringing the two actions separately.”). Nevertheless, despite this confusion, the rule emerging from Decina is clear—a party that lost on its lien claim cannot receive attorney fees under § 118(2).

 In interpreting statutes, “words and clauses will not be divorced from those which precede and those which follow.” Sanchick v State Bd of Optometry, 342 Mich 555, 559; 70 NW2d 757 (1955).

 MCL 570.1118(2) (emphasis added).

 As explained later in this opinion, this is because the lien claimant will have used the CLA to achieve its main objective in filing suit, i.e., to obtain payment for its labor or materials.

 See Willard v Magoon, 30 Mich 273, 279 (1874).

 See Canvasser Custom Builders, Inc v Seskin, 38 Mich App 643, 647-648; 196 NW2d 859 (1972).

 Erb Lumber Co v Homeowner Constr Lien Recovery Fund, 206 Mich App 716, 722; 522 NW2d 917 (1994).

 For example, in order to enter a judgment of foreclosure, the court must find that the amount adjudged to be due on the contract has not been paid. MCL 570.1121(1); Dane Constr, Inc v Royal’s Wine & Deli, Inc, 192 Mich App 287, 294; 480 NW2d 343 (1991). (“We conclude, therefore, that although the amount of damages that plaintiff can recover for breach of contract has been fixed by the mediation award, thereby limiting the amount that may he claimed under the construction lien, plaintiff maintains its right to collect those damages through the remedy provided by the construction lien.”). See also MCL 570.1107(1) (“A construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant’s contract less payments made on the contract.”); MCL 570.1113(1) (stating that an owner or lessee must make a copy of the contract available for inspection upon written demand by a lien claimant); MCL 570.1114 (stating that a contractor must have a written contract in order to have a right to a construction lien on the interest of an owner or lessee in a residential structure); MCL 570.1117(5) (“In connection with *562 an action for foreclosure of a construction lien, the lien claimant also may maintain an action on any contract from which the lien arose.”).

 John S Hanes & Co v Wadey, 73 Mich 178, 181; 41 NW 222 (1889).

 F M Sibley Lumber Co v Wayne Circuit Judge, 243 Mich 483, 485-489; 220 NW 746 (1928). This may occur by bringing foreclosure and contract claims in the same action, as in the instant case, or by proceeding with separate contract and foreclosure actions, as in Bosch v Altman Constr Corp, 100 Mich App 289, 292-293; 298 NW2d 725 (1980).

 See F M Sibley, 243 Mich at 486, quoting 40 CJ, p 367.

 Old Kent Bank of Kalamazoo v Whitaker Constr Co, 222 Mich App 436, 439; 566 NW2d 1 (1997).

 See MCL 570.1118(2).

 As the Court of Appeals panel observed, the amount awarded was 72% of the amount RCG requested. Ronnisch, 306 Mich App at 207 n 4.

 MCL 8.3a. In ascertaining the meaning of a term, a court may determine the meaning at the time the statute was enacted by consulting dictionaries from that time. See, e.g., Cain v Waste Mgt, Inc (After Remand), 472 Mich 236, 247; 697 NW2d 130 (2006); Title Office, Inc v Van Burén Co Treasurer, 469 Mich 516, 622; 676 NW2d 207 (2004).

 Black’s Law Dictionary (5th ed).

 See Buckhannon Bd & Care Home, Inc v West Virginia Dep’t of Health & Human Resources, 532 US 598, 602-605; 121 S Ct 1835; 149 L Ed 2d 855 (2001); id. at 622 (Scalia, J., concurring).

 See Corallo v Merrick Central Carburetor, Inc, 733 F2d 248, 252 (CA 2, 1984); Marion Mfg Co v Long, 588 F2d 538, 541 (CA 6, 1978); Nix v Spector Freight Sys, Inc, 264 F2d 875, 877 (CA 3, 1959).

 As previously noted, one of the fundamental purposes of the CLA is to protect contractors, workers, and suppliers by providing a method to secure payment for their labor and materials.

 The dissent frets that allowing attorney fees when a party prevails on the related contract action will open the floodgates to claims for attorney fees under § 118(2) any time a party prevails on other, unspecified, ancillary claims. However, it is hard to imagine other ancillary claims bearing as close a relationship as the lien foreclosure and underlying contract claims. The plain language of the CLA contemplates that a party may achieve its main objective through either of these integrally related claims. And, not surprisingly, while the CLA repeatedly refers to the underlying contract, it does not specifically refer to any other ancillary claims. See note 51 of this opinion. In any event, such claims are not at issue here, and, to the extent they may exist, this Court can address them in a future case.

 That RCG did not recover the full amount of damages sought is not dispositive with regard to whether it was a prevailing party. For the related determination whether a party is the prevailing party for the purposes of MCR 2.625 (concerning taxation of costs), courts have held that recovery of the full amount of damages is unnecessary See Forest City Enterprises, Inc v Leemon Oil Co, 228 Mich App 57, 81; 577 NW2d 150 (1998). Instead, “in order to be considered a prevailing party, that party must show, at the very least, that its position was improved by the litigation.” Id. RCG can certainly demonstrate that its position was improved by the litigation given that it recovered 72% of the amount sought.

 Under MCR 3.602(1), “[a] party may move for confirmation of an arbitration award within one year after the award was rendered.” “Confirmation is a summary proceeding where the court merely converts an arbitration award into a final judgment.” 6 CJS, Arbitration, § 181, p 248 (2004). A party may seek confirmation for various reasons. For instance, a party may initiate confirmation proceedings if it desires that an official record of the confirmation and judgment be made. See 6 CJS, Arbitration, § 178, pp 244-246 (2004).

 See MCR 3.602(M).

 See, e.g., Henderson v Summerville Ford-Mercury Inc, 406 SC 440, 454; 748 SE2d 221 (2013) (holding that payment does not moot a confirmation request); Drummond v State Farm Mut Auto Ins Co, 280 Neb 258, 262; 785 NW2d 829 (2010) (same); Mikelson v United Servs Auto Ass’n, 122 Hawaii 393,400-401; 227 P3d 559 (Hawaii Ct App, 2010) (concluding that satisfaction did not render confirmation moot because confirmation was statutorily mandated and because confirmation is concerned with the propriety of the award itself and is unrelated to enforcement); In re Bernstein Family Ltd Partnership v Sovereign Partners, LP, 66 AD3d 1, 6; 883 NYS2d 201 (2009) (“[I]t is irrelevant in a proceeding to confirm an award whether there is a dispute about whether the award has been fully satisfied.”); Collins v D R Horton, Inc, 361F Supp 2d 1085, 1093 (D Ariz, 2005) (holding that confirmation was mandatory, regardless of payment, unless the award is modified, vacated, or corrected); Pacific Law Group: USA v Gibson, 6 Cal App 4th 577, 580; 7 Cal Rptr 2d 878 (1992) (holding that nothing in California’s arbitration statute limits confirmation to circumstances in which the award has not heen paid).
*566 But see Stewart Title Guaranty Co v Tilden, 2003 Wy 31, ¶ 9; 64 P3d 739 (2003) (holding that a trial court may deny a confirmation motion when satisfaction has rendered the controversy moot); Murphy v Nat’l Union Fire Ins Co, 438 Mass 529, 533; 781 NE2d 1232 (2003) (same); Kenneth W Brooks Trust A v Pacific Media LLC, 111 Wash App 393, 400; 44 P3d 938 (2002) (same); Derwin v Gen Dynamics Corp, 719 F2d 484, 491-493 (CA 1, 1983) (affirming the trial court’s denial of confirmation of the award on the ground that confirmation was unwarranted given that the award had been satisfied).

 Nor does LOTN’s payment of the arbitration award before confirmation affect RCG’s status as a prevailing party. Rather, its status as a prevailing party is determined as of the date of the arbitration award, not any subsequent judgment confirming the award. See Marion, 588 F2d at 541 (“Thus, if the [arbitration] award is upheld in a reviewing court, the rights of the parties are determined from the date of the award and not the date of the court’s judgment confirming the award.”); 4 Am Jur 2d, Alternative Dispute Resolution, § 204, p 261 (2016).

 Cf. Solution Source, Inc vLPR Assoc Ltd Partnership, 252 Mich App 368, 381; 652 NW2d 474 (2002) (“A lien claimant without significant financial resources could end up being forced to abandon his valid lien claim if met with resistance from the lienor at every turn.”).

 See Mayhew v Berrien Co Rd Comm, 414 Mich 399, 410; 326 NW2d 366 (1982); People v Gill, 247 Mich 479, 480; 226 NW 214 (1929).

 The dissent asserts that RCG’s acceptance of LOTN’s payment extinguished its right to a lien, thereby precluding it from later seeking attorney fees. But this argument loses sight of the CLA’s plain language, which only requires that a party be a lien claimant when it becomes the prevailing party, not when it seeks attorney fees. See MCL 570.1118(2). Because RCG became the prevailing party by virtue of the arbitration award in its favor, LOTN’s subsequent payment did not bar RCG from seeking attorney fees. See Solution Source, 252 Mich App at 381 (“Therefore, we hold that satisfaction of a lien does not bar a lien claimant who is the prevailing party from recovering its appellate and postjudgment attorney fees incurred in connection with enforcement of its lien.”).

 We disagree with the dissent’s assertions that our opinion is not faithful to the text, context, and purpose of the CLA. Instead, we believe it is painstakingly so and that the dissent’s histrionics are a poor substitute for proper legal analysis.

 We note that under MCL 570.1118(2), “[t]he court may allow reasonable attorneys’ fees . .. .” (Emphasis added.) The use of the term *568 “may” indicates discretionary, rather than mandatory, action. Murphy v Mich Bell Tel Co, 447 Mich 93, 100; 523 NW2d 310 (1994). Thus, a party who demonstrates that it is a prevailing lien claimant in an action to enforce a construction lien through foreclosure may seek and be awarded attorney fees under MCL 570.1118(2) but is not entitled to them. On remand, the decision to award reasonable attorney fees remains within the sound discretion of the trial court. See Vugterveen, 454 Mich at 133 (“A court has discretion to award attorney fees to a prevailing lien claimant. . . .”).