*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH GIPFERT, doing business as GIPFERT'S
CONSTRUCTION,

        Plaintiff,

v

CONTINENTAL REAL ESTATE COMPANIES,
doing business as CONTINENTAL BUILDING
COMPANY,

        Plaintiff/Third-Party Defendant-
        Appellant,

v

HARTFORD FIRE INSURANCE COMPANY,

        Defendant/Third-Party Defendant-
        Appellant,

and

CCSHP ANN ARBOR I, LLC, and NORTH
AMERICAN CONSTRUCTION ENTERPRISES,
LLC,

        Defendants,

and

GYPSUM SUPPLY COMPANY,

        Third-Party Plaintiff-Appellee.

UNPUBLISHED
November 12, 2024
10:56 AM

No. 365748
Washtenaw Circuit Court
LC No. 18-000859-CB

-1-

Before:  GADOLA, C.J., and SWARTZLE and LETICA, JJ.

PER CURIAM.

Plaintiff/third-party defendant, Continental Real Estate Companies, doing business as Continental Building Company (CBC), and defendant/third-party defendant, Hartford Fire Insurance Company (Hartford), appeal as of right the trial court's February 25, 2020 order, which granted third-party plaintiff Gypsum Supply Company's (Gypsum) motion for summary disposition pursuant to MCR 2.116(C)(9) (failure to assert a valid defense), (C)(10) (genuine issue of material fact), and (I)(2) (opposing party entitled to judgment), and denied CBC and Hartford's motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and MCR 2.116(C)(10).  We affirm.

Defendant CCSHP Ann Arbor I, LLC (CCSHP) began construction of a building on its property in Ann Arbor.  CCSHP retained CBC to serve as the general contractor for the project.  CBC entered into a subcontract with defendant North American Construction Enterprises, LLC (NACE) for the metal stud and drywall work for the project.  NACE retained Gypsum to supply drywall materials.  In April 2018, NACE fell behind with its payments to Gypsum.  In order to alleviate this outstanding balance, representatives from NACE, Gypsum, and CBC discussed CBC making a direct payment to Gypsum for $317,738.89.  However, CBC continued to make direct payments to NACE, and never paid Gypsum.  As a result, CBC paid NACE in full for materials provided by Gypsum.

Gypsum filed a claim of lien upon the property for unpaid invoices from May 2, 2018 through July 12, 2018.  Gypsum stated that it provided labor or material to NACE and CBC for the property owned by CCSHP.  Gypsum claimed that its contract amount was $910,797.86, for which Gypsum received payment in the amount of $467,592.83.  Therefore, Gypsum claimed the lien in the amount of $443,205.03, and requested attorney fees, costs, and a 1.5% time-price differential service charge per month.  Gypsum provided proof of service for the claim of lien and notice of furnishing to CCSHP, CBC, and NACE.  CBC and Hartford filed a bond in the amount of $886,410.06 that discharged Gypsum's claim of lien.  The Washtenaw County Clerk officially discharged Gypsum's lien.

In Docket No. 18-000804-CB, CBC filed a complaint against NACE and NACE filed a third-party complaint against Gypsum.  In Docket No. 18-000979-CB, Ivan Carranza, who provided drywall labor to Empirical Drywall, LLC, another subcontractor on the project, filed a claim against Hartford, NACE, Empirical Drywall, LLC, and CCSHP.  In 18-000859-CB, Gipfert filed a complaint against Hartford, NACE, and CCSHP, and Gypsum filed a third-party complaint and cross-claim against CBC and Hartford.  The trial court ordered the consolidation of all three cases.

Gypsum's third-party complaint against CBC and Hartford claimed that Hartford owed Gypsum $443,205.03 on the bond, and requested attorney fees, costs, and a 1.5% time-price differential service charge per month.  Gypsum further claimed that CBC breached a contract between CBC and NACE of which Gypsum was the third-party beneficiary.  Upon the parties' motions for summary disposition, the trial court found that Gypsum was entitled to a judgment against Hartford and CBC on the bond.  The trial court also found that a valid contract existed

between CBC and NACE in which CBC agreed to pay Gypsum directly and that CBC breached that contract. The trial court dismissed any remaining claims that CBC and Hartford had against Gypsum. CBC and Hartford now appeal.

## I. STANDARD OF REVIEW

This Court reviews the interpretation and application of a statute de novo. *Daher v Prime Healthcare Servs-Garden City, LLC*, ___ Mich ___, ___; ___ NW3d___ (2024) (Docket No 165377); slip op at 3. This Court also reviews de novo the construction of a contract as a question of law. *Shay v Aldrich*, 487 Mich 648, 656; 790 NW2d 629 (2010).

This Court reviews a trial court's decision to grant or deny summary disposition de novo. *Estate of Voutsaras v Bender*, 326 Mich App 667, 671; 929 NW2d 809 (2019). Summary disposition pursuant to MCR 2.116(C)(9) is proper if a defendant failed to plead a valid defense to a claim. *Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 261; 911 NW2d 241 (2017). "A motion under MCR 2.116(C)(9) tests the sufficiency of a defendant's pleadings by accepting all well-pleaded allegations as true." *Id*., quoting *Dimondale v Grable*, 240 Mich App 553, 564; 618 NW2d 23 (2000). Summary disposition under this rule is appropriate if the defenses are "so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery." *Id*.

Summary disposition is appropriate under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact" and support its motion with documentary evidence. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), citing MCR 2.116(G)(4). A court reviewing a motion under MCR 2.116(C)(10) must consider the substantively admissible evidence offered in opposition to the motion. *Maiden*, 461 Mich at 121. To survive summary disposition, the opposing party must set forth specific facts establishing a genuine issue of material fact for trial. *Id.* at 120. A genuine issue of material fact exists when the evidence presented "leave[s] open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).

This Court also reviews a grant of summary disposition pursuant to MCR 2.116(I) de novo. *Wilcox v Wheatley*, 342 Mich App 551, 555; 995 NW2d 594 (2022). "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *BC Tile & Marble Co v Multi Bldg Co, Inc*, 288 Mich App 576, 590; 794 NW2d 76 (2010) (citation omitted).

## II. CLAIM OF LIEN

CBC and Hartford argue that the trial court erred by finding that Gypsum had a valid claim against them on the bond that they filed to discharge Gypsum's claim of lien. We disagree.

"The CLA is intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016) (quotation marks and citation omitted). The CLA provides a method for contractors, workers, and suppliers to secure payment for their labor and materials. *Id*. at 552-553. "The act is to be liberally construed in the face of ambiguity so as to effectuate its purposes." *Vugterveen Sys, Inc, v Olde Millpond Corp*, 454 Mich 119, 129; 560 NW2d 43 (1997).

MCL 570.1103(3) defines a construction lien as the lien of a contractor, subcontractor, or supplier as described in MCL 570.1107. MCL 570.1107(1) grants the contractors, subcontractors, and suppliers a construction lien "upon the interest of the owner or lessee who contracted for the improvement to the real property." MCL 570.1107(1) also limits the amount of a lien to the amount of the lien claimant's contract, less any payments made on the contract. MCL 570.1103(4) defines "contract" as used in the CLA as, "a contract, of whatever nature, for the providing of improvements to real property…." The lien attaches to the interest of the owner or person who contracted for the improvement. MCL 570.1107(1)-(3).

In order to perfect a lien, a contractor, subcontractor, or supplier must record a claim of lien in the office of the register of deeds in the county were the improvement was made within 90 days of the claimant's last furnishing of labor or material for the improvement. MCL 570.1111. MCL 570.1109 provides an example of a notice of furnishing, which includes the name of the owner or lessee, name and address of the contracting party, and a description of the work. MCL 570.1111 provides an example of a claim of lien. A lien claimant must serve a copy on the owner or his designee within 15 days after recording. MCL 570.1111(5). The lien may be enforced with a foreclosure action commencing within one year of recording the claim of lien. MCL 570.1117(1).

However, the claim of lien may be vacated and discharged if a bond, which lists the lien claimant as an obligee, is filed with the county clerk and the lien claimant is notified within 10 days. MCL 570.1116(1). "The bond may be either a cash bond executed by a principal, or a surety bond executed by a principal and a surety company authorized to do business in this state." MCL 570.1116(1). "The bond shall be in the penal sum of twice the amount for which the lien is claimed and shall be conditioned on the payment of any sum for which the obligee in the bond may obtain judgment on the claim for which the claim of lien was filed." MCL 570.1116(1). MCL 570.1116(2) states that once the bond is approved and the lien claimant does not object to the bond, "the claim of lien of the obligee lien claimant named in the claim of lien shall be discharged." Furthermore, "[t]he obligee may make any obligor on the bond a party to an action to enforce a claim under the bond, and a judgment may be recovered in the action against all or any of the obligors." MCL 570.1116(2).

Gypsum filed a claim of lien on July 20, 2018, in the amount of $443,205.03, plus attorney fees, costs, and a contractual time-price differential service charge of 1.5% per month. The claim of lien stated that the contractual amount Gypsum was owed was $910,797.86 and that Gypsum had received payment in the amount of $467,592.83, thus was owed $443,205.03. The claim of lien was served upon CCSHP, CBC, and NACE. In its first amended complaint, Gypsum included invoices for materials provided from May 2, 2018 through April 15, 2019. Gypsum also submitted a notice of furnishing addressed to CBC and NACE dated July 18, 2018, and a sworn statement.

On July 26, 2018, CBC, as principal, and Hartford, as surety, filed a bond with Gypsum as obligee in the amount of $886,410.06.

The Court in *E R Zeiler Excavating, Inc v Valenti Trobec Chandler, Inc*, 270 Mich App 639, 648; 717 NW2d 370 (2006), explained the difference between construction liens and surety bonds. A construction lien exposes real property to liability. *Id*. "A surety bond, on the other hand, releases the real property from potential liability." *Id*. "[T]he bond acts in the nature of an insurance contract giving the contractor security by way of an action to enforce the contract against a surety up to twice the amount of the original lien." *Id*. at 648-649, citing MCL 570.1116(1). The bond, which is backed by the principal or a licensed surety, removes the lien claimant's leverage over the real property. *Id*. at 649. The risks and rights at stake associated with construction liens and with surety bonds are "materially different." *Id*.

> Under Michigan law, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related. A contract is a necessary prerequisite to a construction lien. A construction lien stems from the underlying contract, and its amount is determined by the contract's terms. These principles are reflected throughout the CLA. In essence, "[t]he lien is but a means for enforcing the payment of the debt arising from the performance of the contract...." A party may proceed to enforce its lien through foreclosure while simultaneously seeking recovery based on the contract from which the lien arose. But there can only be one satisfaction. Thus, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related, and allowing a party to pursue both "merely gives it a better chance of recovering what it is owed." [*Ronnisch Constr Group, Inc*, 499 Mich at 561-562 (citations omitted)].

On appeal, CBC and Hartford claim that Gypsum had 10 days to object to the bond pursuant to MCL 570.1116(2), and it did not do so. But MCL 570.1116(2) provides that the lien claimant has 10 days to object to the *sufficiency of the surety on the bond*. Without any objections to the sufficiency of the surety, Gypsum did not waive its ability to enforce a claim on the bond, as CBC and Hartford imply.

CBC further argues that it did not have a direct contract with Gypsum; that CBC's offer to pay Gypsum directly was never accepted by NACE, so an agreement was never reached, and the plain language of MCL 570.1107(1) bars Gypsum from claiming a lien against CBC. Gypsum ultimately argues there was a contract between CBC and NACE, and Gypsum was a third-party beneficiary of that contract. But Gypsum also argues that it does not need to have a contract with CBC to recover the cost of its improvements to the property under the CLA. Gypsum made two claims in its complaint: Count I being claim of lien, and Count II being breach of contract. Gypsum's first amended complaint states that its claim against CBC and Hartford was a claim on the bond, which CBC and Hartford filed pursuant to MCL 570.1116. MCL 570.1116(1) provides: "The obligee may make any obligor on the bond a party to an action to enforce a claim under the bond, and a judgment may be recovered in the action against all or any of the obligors." The language of the bond provides that CBC, as principal, and Hartford, as surety, "are held and firmly bound unto Gypsum . . . as obligee in the sum of" $886,410.06. Pursuant to MCL 570.1116(1) and the language of the bond, Gypsum, the obligee, was entitled to file its action to enforce its claim of lien under the bond against CBC and Hartford, the obligors. The trial court applied the

plain and ordinary meaning of MCL 570.1116(1) and properly concluded that Gypsum had a valid CLA claim against CBC and Hartford.[1]

CBC and Hartford also argue that the trial court should have denied Gypsum's MCR 2.116(C)(9) motion because they asserted valid affirmative defenses. CBC and Hartford claim that the trial court improperly weighed evidence against them in order to conclude that there was an agreement between CBC and NACE for CBC to pay Gypsum directly. Finally, CBC and Hartford argue that the trial court erred because there was a genuine issue of material fact as to the amount and legitimacy of Gypsum's lien.

The trial court found that there was no genuine dispute of material fact that Gypsum was not paid for the materials it supplied for the project between May 5, 2018, and July 13, 2018. Upon review of the record, the trial court found that Gypsum provided unpaid invoices from May 5, 2018, to July 13, 2018, and that Hartford and CBC failed to present any evidence that these outstanding invoices were ever paid. The trial court also found that Gypsum did not sign a lien waiver for the period at issue, as it did for "all amounts due to Gypsum Supply Company thru [sic] the date of 4/30/2018." Therefore, the trial court found Gypsum was entitled to judgment against CBC and Hartford in the amount of $443,205.03 plus a time price differential service charge of 1.5% per month, and attorney fees pursuant to the CLA.

We find no genuine issue of material fact that Gypsum was not paid for the period of May 5, 2018, to July 13, 2018. The party moving for summary disposition must support its motion with "affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted." *Barnard Mfg Co, Inc, v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009), citing MCR 2.116(G)(3). "If the moving party properly supports its motion, the burden 'then shifts to the opposing party to establish that a genuine issue of disputed fact exists.'" *Id*. (citation omitted). Gypsum supported its motion for summary disposition with depositions and invoices indicating that it had an outstanding balance due on the contract of $443,205.03. The invoice dates for materials range from May 2, 2018, to July 13, 2018, with due dates ranging from June 30, 2018 to August 31, 2018. The statement date is listed as August 31, 2018. The portion of the invoice titled "Amount Paid" is blank. CBC has not provided any evidence showing these invoices were paid, nor has it provided any evidence showing that the invoices should not be paid due to Gypsum not actually supplying the drywall, or due to some defect with the drywall materials supplied. Thus, CBC and Hartford failed to establish a genuine issue of material fact.

CBC claims that it is not liable under the bond because there was no underlying contract between CBC and Gypsum; the invoices are all addressed to NACE because there was a contract between NACE and Gypsum. CBC purportedly paid NACE in full. This argument is contrary to the CLA. The plain language of the CLA does not require a lien claimant to have a contract with

---

[1] It also bears noting that the CLA, as quoted previously, does not appear to require a contract directly between a subcontractor and the bond obligor or general contractor. The CLA rather defines a contract as being "a contract, of whatever nature, for the providing of improvements to real property…." Gypsum's contract with NACE was such a contract.

the obligor of the bond. Obviously, "[a] contract is a necessary prerequisite to a construction lien," otherwise there would be no basis for improvements to the property. See *Ronnisch Constr Group, Inc*, 499 Mich at 561-562. But there is no specific requirement in the CLA that a lien claimant have a contract with the obligor of the bond. See MCL 570.1103(3).

The trial court granted Gypsum summary disposition under MCR 2.116(C)(9), (C)(10), and (I)(2). As stated above, summary disposition pursuant to MCR 2.116(C)(9) is warranted if a defendant failed to plead a valid defense to a claim. *Edmore*, 322 Mich App at 261. A court is only to look to the parties' pleadings when considering a (C)(9) motion, and must accept all well-pleaded allegations as true. *Id*. The trial court's opinion and order, however, discusses evidence beyond the pleadings such as invoices and waivers. The opinion and order also prefaces the trial court's ruling with "there is no genuine dispute of material fact that Gypsum has not been paid for materials supplied," indicating the trial court more appropriately analyzed the motions for summary disposition under MCR 2.116(C)(10). Therefore, the trial court erred in granting summary disposition under (C)(9). Nevertheless, where summary disposition is granted under the wrong subsection of MCR 2.116, we will review the trial court's order under the correct rule. *Spiek v Michigan Dep't of Transp*, 456 Mich 331, 338 n 9; 572 NW2d 201 (1998). Because the trial court correctly found that Gypsum was entitled to summary disposition under MCR 2.116(C)(10) and (I)(2), reversal is not warranted.

Because we find no error in the trial court granting summary disposition to Gypsum on the bond claim, we decline to address Gypsum's breach of contract claim, an alternative basis for relief.

### III. TIME-PRICE DIFFERENTIAL

CBC and Hartford argue that the trial court should not have awarded Gypsum the time-price differential on its bond claim.

CBC and Hartford failed to preserve this issue by failing to raise it in the lower court. To preserve an issue for appeal, the party asserting error must demonstrate that the issue was raised in the trial court. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg*, ___ Mich App ___, ___; ___ NW3d ____ (2023) (Docket No. 359090); slip op at 2. In addition, "the moving party must show that the same basis for the error claimed on appeal was brought to the trial court's attention." *Id*. at ___; slip op at 2-3 (citation omitted). If a party does not raise an issue in the trial court, "this Court has no obligation to address the issue." *Id*. at ___; slip op at 3. "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and facts necessary for its resolution have been presented." *Id*. (quotation marks and citations omitted).

This Court exercises its discretion to overlook preservation requirements sparingly and only when exceptional circumstances warrant review. *In re Conservatorship of Murray*, 336 Mich App 234, 241; 970 NW2d 372 (2021). Therefore, we treat this argument as waived and decline to address it because it does not present exceptional circumstances that warrant review. Not only did CBC and Hartford fail to preserve this issue in the lower court, they also failed, on appeal, to

adequately address whether Gypsum was entitled to recover the 1.5% time-price differential under the bond.

## IV. CONCLUSION

The trial court did not err in concluding Gypsum had a valid claim against CBC and Hartford on the bond. Thus, the trial court's order granting Gypsum summary disposition is affirmed. Lastly, because CBC and Hartford did not dispute the time-price differential in the trial court, this issue is waived.

Affirmed.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Anica Letica