# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## MAPLES v STATE OF MICHIGAN

Docket No. 160740. Argued on application for leave to appeal April 7, 2021. Decided July 20, 2021.

David A. Maples filed a complaint in the Court of Claims seeking compensation under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*., after his conviction of delivery of cocaine was vacated and the related criminal charges were dismissed. Maples was at a bar with Lawrence Roberts and James Murphy when Murphy sold cocaine to an undercover officer. Although Maples and Roberts claimed they did not know about the drug sale, they were arrested after leaving the bar. The charges against Roberts were eventually dismissed, but the charges against Maples were not. Murphy moved to dismiss the charges against him under an entrapment defense; Maples joined the motion. During a pretrial hearing on the motion, Murphy testified that Maples had not been involved in or aware of the drug deal. Maples also moved to dismiss his case on a speedy-trial violation. The trial court denied both motions. Maples then planned to present Murphy as a defense witness at his trial, but he learned the day before the trial was set to begin that Murphy had reached a plea deal with the prosecution under which he was not permitted to testify on Maples's behalf at Maples's trial. Maples's only other witness, Roberts, could not be located to testify. Maples decided to plead guilty to delivery of cocaine after learning that neither of his witnesses were available to testify and after being incorrectly advised by defense counsel that pleading guilty would not impair his ability to appeal on the basis of the speedy-trial violation. The Court of Appeals, HOLBROOK, JR., P.J., and KELLY and GRIBBS, JJ., denied Maples's appeal in an unpublished per curiam opinion, and the Supreme Court denied his application for leave to appeal. 459 Mich 867 (1998). Maples filed a habeas corpus petition in the United States Court of Appeals for the Sixth Circuit, alleging ineffective assistance of counsel. The Sixth Circuit granted relief, concluding that Maples had been prejudiced by an uncommonly long delay before trial and by his attorney's constitutionally ineffective advice that Maples could raise his speedy-trial-violation claim on appeal after pleading guilty. Maples's charges were then dismissed and his conviction vacated by the Macomb Circuit Court, Richard L. Caretti, J. In his WICA complaint, Maples argued that the exculpatory testimony of Roberts and Murphy that he was unable to present at trial was new evidence that had resulted in the vacation of his convictions and the dismissal of the charges against him. The Court of Claims, MICHAEL J. TALBOT, J., granted summary disposition for the state, concluding that the testimony was not new evidence and, alternatively that it was Maples's trial counsel's deficient performance and the speedy-trial violation that had resulted in the vacation of Maples's conviction, not the proffered testimony. The

Court of Appeals, SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ., affirmed, reasoning that Murphy's testimony was not new evidence because it had been offered at the entrapment hearing and that Roberts's testimony was not new evidence because Maples had not offered any proof regarding how Roberts would testify. 328 Mich App 209 (2019). Maples sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 505 Mich 1088 (2020).

In an opinion by Chief Justice MCCORMACK, joined by Justices BERNSTEIN, CLEMENT, CAVANAGH, and WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

To receive compensation under the WICA, a plaintiff must prove by clear and convincing evidence that (1) new evidence demonstrated that they did not perpetrate the crime, (2) new evidence resulted in their conviction being reversed or vacated, and (3) new evidence resulted in either the dismissal of the charges or in an acquittal of all the charges on retrial. In MCL 691.1752(b), the WICA defines "new evidence," in part, as any evidence that was not presented in the proceedings leading to the plaintiff's conviction. Thus, the Legislature selected a definition that turns on whether the evidence was presented in certain proceedings—not on when it was discovered. Pursuant to the WICA's definition, whether evidence is "new evidence" depends on what constitutes the proceedings leading to a plaintiff's conviction. If the Legislature had intended that evidence presented in any preconviction proceeding could not be new evidence, it could have stated that evidence presented in "*any* proceedings" leading to the plaintiff's conviction was not new evidence. Because the Legislature instead chose narrower language, i.e., "*the* proceedings," "the proceedings leading to plaintiff's conviction" must be a subset of all proceedings. The statute does not further define "the proceedings leading to plaintiff's conviction," but "criminal proceedings" include judicial hearings, sessions, or a prosecution in which a court adjudicates whether a person has committed a crime or pronounces punishment when guilt has already been determined. "Leading" can be used as a transitive or intransitive verb. The Court of Appeals defined "leading" as a transitive verb, meaning "to bring to some conclusion." However, "leading" is used in MCL 691.1752(b) as an intransitive verb. The relevant intransitive definitions are "to tend toward or have a result" or "cause." A conviction results from or is caused by a guilty verdict following a bench or jury trial or from the defendant's admission of guilt in a plea hearing. These proceedings are the subset of proceedings that result in a conviction; pretrial hearings do not result in convictions. Although Maples's conviction would not have occurred but for the trial court's denial of the entrapment motion, the same can be said for an arraignment, preliminary examination, or any other pretrial court proceeding that does not end in the case being dismissed. Additionally, the WICA provides that in order to receive compensation, the plaintiff must prove that new evidence resulted in reversal or vacation of the charges in the judgment of conviction, or dismissal of the charges or a finding of not guilty on retrial. It is not clear how a plaintiff could prove that the new evidence caused a different result after their original conviction was set aside unless "new evidence" refers only to evidence that was not presented to the trier of fact when it initially convicted the plaintiff. This interpretation of "new evidence" gives the best effect to the WICA's remedial purpose to provide compensation for individuals who were wrongfully imprisoned. Maples's claim that Roberts would provide new evidence failed for the reason identified by the courts below: because Maples did not present an affidavit or other offer of proof showing what Roberts would say, Maples failed to prove that Roberts would have offered exculpatory testimony that could be considered "new evidence" under the WICA. On the other hand, there was an

adequate offer of proof regarding Murphy's proposed testimony, and that testimony was new evidence under the WICA because it was not presented at a proceeding that adjudicated guilt.

Reversed and remanded to the Court of Appeals.

Justice ZAHRA, joined by Justice VIVIANO, dissenting, disagreed that Maples had presented new evidence as defined by the WICA. Because Murphy's proffered testimony was presented at the entrapment hearing, it was not new evidence. Under the WICA, "the proceedings leading to plaintiff's conviction" are not limited to a plea hearing or trial, but more broadly include all events or actions that, taken together, tend toward, result in, or cause the plaintiff's conviction, which necessarily includes pretrial hearings. Although the majority cited the definition of "criminal proceeding" in its interpretation of the statutory language, the statute does not use this term, but rather refers to "proceedings." "Proceedings" is a legal term of art that may be defined as the regular and orderly progression of a lawsuit, including all acts and events between commencement and entry of judgment. Therefore, "proceedings" is not limited to the final plea hearing or trial at which guilt is ultimately determined. The statute's use of the plural "proceedings" further supports the interpretation that multiple events or actions are encompassed by this term as opposed to a singular plea hearing or trial. The plain meaning of "leading to" is to tend toward or have a result, which, as used in the statute, includes the series of events that tend toward or result in a conviction. Because both "proceedings" and "leading to" are defined broadly as used in the statute, when read together, they did not support the majority's conclusion that "proceedings leading to plaintiff's conviction" refers only to the one event that most directly resulted in plaintiff's conviction. Justice ZAHRA would hold that Maples did not present new evidence under the WICA because Murphy's testimony was offered at the entrapment hearing, which was a proceeding that led to plaintiff's conviction.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 20, 2021

STATE OF MICHIGAN

SUPREME COURT

DAVID A. MAPLES,

Plaintiff-Appellant,

v

No. 160740

STATE OF MICHIGAN,

Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MCCORMACK, C.J.

The Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq.*, allows people who were wrongfully imprisoned to seek compensation for the harm they suffered. The WICA limits eligibility for compensation to claimants who can prove (among other things) that new evidence shows that they were wrongfully convicted. This appeal is about what "new evidence" means under the act.

The WICA defines "new evidence," in relevant part, as "any evidence that was not presented in the proceedings leading to plaintiff's conviction . . . ." MCL 691.1752(b). David Maples, the WICA plaintiff here, relies on exculpatory evidence that was unavailable to present at his originally scheduled trial but *was* considered by the court at a pretrial hearing. We hold that this is new evidence under the WICA because it was not presented to a trier of fact during a proceeding that determined guilt—a trial or a plea hearing. We therefore reverse the decision of the Court of Appeals and remand this case to that Court for further proceedings.

## I. FACTS AND PROCEEDINGS

Maples, Lawrence Roberts, and James Murphy were at a bar when Murphy sold cocaine to an undercover officer. Maples and Roberts claimed they did not know about the drug sale but were arrested after they left the bar together. The charges against Roberts were eventually dismissed; the charges against Maples were not.

Shortly after his arrest, Murphy wrote a letter to the trial court, explaining that Maples and Roberts had nothing to do with the crime. During a pretrial hearing on Murphy's motion to dismiss his own charges based on an entrapment defense, which Maples joined, Murphy testified that Maples was neither involved in nor aware of the drug deal. (Murphy later signed affidavits swearing to the same.) The trial court denied that motion. Maples also moved to dismiss his case for a speedy-trial violation but did not prevail.

After the trial court denied his entrapment and speedy-trial motions, Maples planned to present Murphy as a defense witness at his trial. But the day before it was set to begin,

2

he learned that Murphy had promised the prosecution he would not testify on Maples's behalf as part of his own plea deal. And Roberts—Maples's only other witness—couldn't be found. With no available witnesses, and relying on his counsel's advice that he could still appeal the speedy-trial violation, Maples pled guilty to delivery of cocaine.

Maples's appeal did not succeed in the Court of Appeals, and this Court denied leave; his attorney's advice that he could challenge the speedy-trial violation on appeal after pleading guilty was wrong. See *People v Maples*, unpublished per curiam opinion of the Court of Appeals, issued November 4, 1997 (Docket No. 196975), p 1; *People v Maples*, 459 Mich 867 (1998). He filed a habeas corpus petition in federal court alleging ineffective assistance of counsel based on that incorrect advice, and the United States Court of Appeals for the Sixth Circuit granted him relief. *Maples v Stegall*, 427 F3d 1020, 1034 (CA 6, 2005). The panel concluded that Maples had been prejudiced by his trial's uncommonly long delay because both Roberts and Murphy likely would have testified favorably for him but were unavailable by the time of trial. *Id*. at 1033-1034. Since Maples's speedy-trial-violation claim had merit, his attorney was constitutionally ineffective for advising him to plead guilty when doing so waived his right to appeal the claim, and he was entitled to habeas relief on that basis. *Id*. at 1034. The Macomb Circuit Court then dismissed Maples's criminal charges and vacated his conviction.

Maples filed his WICA complaint in the Court of Claims shortly after the WICA became law in 2017, seeking compensation from the state for his wrongful imprisonment. Maples argued that he met the WICA's requirements for compensation because new evidence demonstrated that he did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction. The new evidence that resulted

in the vacation of his convictions and the dismissal of the charges against him, according to Maples, was the exculpatory testimony of Murphy and Roberts that he was unable to present at a trial. Maples relied on Murphy's testimony at the entrapment hearing, Murphy's affidavits, and Murphy's letter to the trial court to support his claim. Maples did not include a similar offer of proof to establish Roberts's purported testimony, though he argued that Roberts would have testified favorably for him.

The state moved for summary disposition, which the Court of Claims granted under MCR 2.116(C)(10). The court determined that neither Murphy's nor Roberts's testimony was new evidence. Alternatively, the court found that it was Maples's trial counsel's deficient performance and the speedy-trial violation that had "resulted in" the vacation of his conviction, not Murphy's proffered testimony.

The Court of Appeals affirmed. *Maples v Michigan*, 328 Mich App 209, 213; 936 NW2d 857 (2019). The panel agreed that Murphy's testimony was not new evidence because it had been presented at the entrapment hearing. *Id*. at 221. It also agreed that Roberts's alleged testimony was not new evidence because Maples had offered no proof of what that testimony would have been. *Id*. at 221-222. Therefore, the panel held that the Court of Claims did not err by granting summary disposition in the state's favor. *Id*. at 222. Because it found that Maples had not carried his burden of proof by supporting his claim with new evidence, the panel did not address the alternative ground proffered by the Court of Claims for dismissing his case. *Id*. This appeal followed.

4

## II. THE WICA'S "NEW EVIDENCE" REQUIREMENT

New evidence is the key to prevailing on a claim for compensation. To receive an award under the WICA, the plaintiff must prove by clear and convincing evidence that (1) new evidence demonstrates that they did not perpetrate the crime; (2) new evidence resulted in their conviction being reversed or vacated; and (3) new evidence resulted in either the dismissal of the charges or in an acquittal of all the charges on retrial. MCL 691.1755(1)(c). The WICA defines new evidence as follows:

> "New evidence" means any evidence that was not presented in the proceedings leading to plaintiff's conviction, including new testimony, expert interpretation, the results of DNA testing, or other test results relating to evidence that was presented in the proceedings leading to plaintiff's conviction. New evidence does not include a recantation by a witness unless there is other evidence to support the recantation or unless the prosecuting attorney for the county in which the plaintiff was convicted or, if the department of attorney general prosecuted the case, the attorney general agrees that the recantation constitutes new evidence without other evidence to support the recantation. [MCL 691.1752(b).]

The WICA does not further define any of these terms. It does not explain what "proceedings" might "lead[] to [the] plaintiff's conviction."

We have long required criminal defendants seeking relief from judgment based on new evidence to show that the evidence is not just new, but that it is newly discovered. See *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). As this Court has explained, "evidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial." *People v Rao*, 491 Mich 271, 281; 815 NW2d 105 (2012). Had the Legislature intended to exclude evidence like Murphy's exculpatory testimony from the definition of "new evidence" because it was known at the time of trial, it could

5

have simply adopted our well-established standard for newly discovered evidence.  The WICA's text, however, includes no discovery timing requirement.

The Legislature chose not to incorporate this Court's definition of new evidence into the WICA even though it was aware of our judge-made standard for newly discovered evidence.  See *Reed v Breton*, 475 Mich 531, 540; 718 NW2d 770 (2006) ("[T]he Legislature is held to be aware of this state's law . . . .").  The WICA's definition of new evidence turns not on when it was discovered, but on whether the evidence was presented in certain proceedings.

## III.  ANALYSIS

We review the interpretation of the WICA de novo.  *Sanford v Michigan*, 506 Mich 10, 14; 954 NW2d 82 (2020).  As always, our primary task is to determine and give effect to the Legislature's intent.  *Id*. at 14-15.  The most reliable indicator of intent is usually the statute's text.  *Badeen v PAR, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014).  When a term in that text is undefined, we apply its plain and ordinary meaning.  *Honigman Miller Schwartz & Cohn LLP v Detroit*, 505 Mich 284, 305-306; 952 NW2d 358 (2020).  And we analyze the ordinary meaning of statutory language in the context of the entire statute, *TOMRA of North America, Inc v Dep't of Treasury*, 505 Mich 333, 339; 952 NW2d 384 (2020), to give it "the reasonable construction that best accomplishes the purpose of the statute," *People v Feezel*, 486 Mich 184, 205; 783 NW2d 67 (2010) (quotation marks and citation omitted).

The meaning of "new evidence" under the WICA depends on what "proceedings lead[] to [a] plaintiff's conviction."  If the entrapment hearing was a proceeding that led to

6

Maples's conviction, his complaint would fail as a matter of law because Murphy's exculpatory testimony would not be new evidence under the WICA.

The text of MCL 691.1752(b) in isolation makes this a hard question. But the text isn't isolated, and we "must construe its meaning in light of the context of its use." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 367-368; 917 NW2d 603 (2018). The term's context in the statute and the statute's remedial purpose make the answer clear.

We start with the text. The WICA defines new evidence as "any evidence that was not presented in the proceedings leading to plaintiff's conviction . . . ." MCL 691.1752(b). This definition has three elements: (1) "any evidence";[1] (2) "that was not presented"; (3) "in the proceedings leading to plaintiff's conviction." The third element is the only one that has been disputed. The Court of Appeals held that "the proceedings leading to plaintiff's conviction" means *any* proceeding in the case (including pretrial hearings) that "brought about the [plaintiff's] conviction." *Maples*, 328 Mich App at 220. The panel reasoned that since the information about Murphy's exculpatory evidence was presented at the entrapment hearing and the court denied that motion, the hearing was a proceeding that brought about the conviction. *Id*. Maples has consistently argued (and the Attorney

---

[1] Evidence is "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact; anything presented to the senses and offered to prove the existence or nonexistence of a fact . . . ." *Black's Law Dictionary* (11th ed). Maples's claim that Roberts would also provide new evidence fails for the reason identified by the courts below: because Maples has not presented an affidavit or other offer of proof showing what Roberts would say, Maples has failed to prove that Roberts would have offered exculpatory testimony that could be considered "new evidence" under the WICA.

General ultimately endorsed) that "the proceedings leading to plaintiff's conviction" include only the proceedings that determined guilt—that is, the trial or a guilty or no-contest plea. We agree with Maples and the Attorney General.

First, the definition is limited to "*the* proceedings leading to plaintiff's conviction." If the Legislature intended to include all preconviction proceedings, it could have written MCL 691.1752(b) to bar evidence that was presented in "*any* proceeding leading to plaintiff's conviction." The indefinite article "any" means "one, some, or all indiscriminately of whatever quantity." *Merriam-Webster's Collegiate Dictionary* (11th ed). This contrasts with "the," a definite article, which has "a specifying or particularizing effect." *Massey v Mandell*, 462 Mich 375, 382 n 5; 614 NW2d 70 (2000) (quotation marks and citation omitted). When "the" and an indefinite article are used within the same statutory provision, they should not be read to mean the same thing. *Id.* See also *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009) ("When the Legislature uses different words, the words are generally intended to connote different meanings."). Such is the case here: MCL 691.1752(b) states that new evidence is "*any* evidence that was not presented in *the* proceedings . . . ." MCL 691.1752(b) (emphasis added). "Any" and "the" are not synonymous. Similarly, if the Legislature meant to include all proceedings in a case, it could have defined new evidence as "any evidence that was not presented in the original proceedings." But it cabined "the proceedings" to those "*leading to plaintiff's conviction.*" "The" proceedings leading to a conviction, therefore, must be a subset of all proceedings in a case.

8

That the proceedings leading to the plaintiff's conviction can't mean all the proceedings in the case gets us only so far; it doesn't tell us what subset of proceedings are included in the definition. The Court of Appeals aptly recognized this when it sought to limit "the proceedings" from all proceedings to only those that "brought about the conviction." *Maples*, 328 Mich App at 220-221.

We agree with the panel that a "criminal proceeding" is "[a] judicial hearing, session, or prosecution in which a court adjudicates whether a person has committed a crime or, having already fixed guilt, decides on the offender's punishment; a criminal hearing or trial." *Black's Law Dictionary* (10th ed). But we disagree with the panel's understanding of "leading."

The panel selected a definition of "lead"—"to bring to some conclusion," see *Merriam-Webster's Collegiate Dictionary* (11th ed), p 706—that defines the word in one of its transitive senses. "Leading" in MCL 691.1752(b), however, is used as an intransitive verb. See Strunk & White, *The Elements of Style* (Needham Heights: Allyn & Bacon, 2000), p 95 (a transitive verb is "[a] verb that requires a direct object to complete its meaning"). When used as a transitive verb, "leading" may mean: (1) "to guide on a way" (e.g., *he led the officers to his hiding place*); (2) "to direct the operations, activity, or performance of" (e.g., *the director is leading the orchestra*); or (3) "to bring to some conclusion or condition" (e.g., *they led me to believe otherwise*). Merriam-Webster.com Dictionary, *Lead* <https://www.merriam-webster.com/dictionary/lead> (accessed July 9, 2021) [https://perma.cc/9UD3-5N6P]. The direct objects in these examples—"the officers," "the orchestra," and "me"—receive the action from the verb "leading" and are necessary to give it meaning. In contrast, "leading" as used in MCL 691.1752(b) doesn't

9

require a direct object to complete its meaning. "[T]he proceedings leading to plaintiff's conviction" doesn't have a direct object that receives the action from the verb—here, "leading" is an intransitive verb. The verb's form informs our interpretation; we can't rely on the definition for a transitive verb when the statute uses the intransitive form.

The relevant definition of "lead" when used as an intransitive verb is "to tend toward or have a result." *Merriam-Webster's Collegiate Dictionary* (11th ed). It also is synonymous with "cause." See Cambridge Dictionary, *Lead* <https://dictionary.cambridge.org/us/dictionary/english/lead> (accessed June 4, 2021) [https://perma.cc/SKJ8-636L] (defining "lead," in relevant part, as "to prepare the way for something to happen; cause," noting that this sense of the word can be used transitively or intransitively, and providing the following example of the word being used intransitively: "Ten years of scientific research led to the development of the new drug").

A conviction *results from* or is *caused by* a guilty verdict by a judge or jury following a trial or from the defendant's admission of guilt in a plea hearing. Those are the subset of proceedings that result in or cause a conviction; no other proceeding in a criminal case does that. Pretrial hearings do not result in a conviction; they can result in the dismissal of charges or in setting the parameters for a trial.

The Court of Appeals correctly observed that if the trial court had granted the entrapment motion, Maples never would have been convicted. See *Maples*, 328 Mich App at 221. Thus, the panel held, the entrapment hearing was a proceeding leading to Maples's conviction. *Id*. It is true that but for the trial court's denial of the entrapment motion, Maples's conviction would not have occurred. Not prevailing at the entrapment hearing meant that Maples's case proceeded—but the same can be said for an arraignment, a

10

preliminary examination, and every other pretrial court proceeding that doesn't end in the case being dismissed. For this reason, the Court of Appeals' conclusion that the entrapment hearing led to a conviction because it did not end the case does not provide any limiting principle to define the subset of proceedings that lead to a conviction. The panel did not explain why a motion hearing on an entrapment claim is different from any other pretrial proceeding that does not end in the case being dismissed.[2] Despite the panel's effort to cabin "the proceedings" to a specific subset of the criminal proceedings, its definition and application did not do so.[3]

Moreover, the WICA's broader context and statutory scheme show that "leading to" does not mean "to cause" as in but-for cause. And as always, we must analyze the definition "in harmony with the whole of the statute, construed in light of history and common sense." *Honigman*, 505 Mich at 295 (quotation marks and citation omitted). The WICA uses the term "new evidence" elsewhere and in a pivotal way. To receive WICA compensation, the plaintiff must prove that (1) new evidence demonstrates that they didn't perpetrate the crime; (2) new evidence "*results in* the reversal or vacation of the charges in the judgment of conviction"; and (3) new evidence "*results in* either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial." MCL 691.1755(1)(c)

---

[2] A defendant who does not prevail at an entrapment hearing is no differently situated than one who never raised an entrapment defense—no conclusion is brought about in either case. In both cases, the prosecutor would still need to secure a conviction to bring the case to some conclusion.

[3] For the same reason, we fail to see how Justice ZAHRA's broader interpretation of "the proceedings leading to plaintiff's conviction" sufficiently distinguishes between all the proceedings in a criminal case and those that result in a conviction.

11

(emphasis added). A plaintiff's entitlement to compensation thus turns on whether they can prove that the new evidence caused a different result after their original conviction was set aside. It is hard to imagine how a plaintiff could make this showing unless "new evidence" refers only to evidence that was not presented to the trier of fact when it convicted the plaintiff in the first place. Given this context, when it defined "new evidence," the Legislature was concerned with whether the evidence was considered by the trier of fact when it convicted the WICA plaintiff—not whether it was presented at a pretrial hearing.

Finally, this construction of "new evidence" is the one that best gives effect to the WICA's purpose. *People v Sharpe*, 502 Mich 313, 326; 918 NW2d 504 (2018) ("When interpreting a statute, our primary goal is to ascertain and give effect to the Legislature's intent."). The WICA's remedial purpose is "to provide compensation and other relief for individuals wrongfully imprisoned for crimes . . . ." 2016 PA 343, title.

A hypothetical is useful. Imagine a pretrial defense motion alleging that the prosecution is withholding exculpatory evidence in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and requesting that the court order that the evidence be disclosed. The trial court conducts an *in camera* review of the evidence and erroneously concludes that production is not required, so the evidence is never considered by the jury. If, after their conviction, the defendant eventually prevailed on the *Brady* claim and filed a complaint under the WICA, they would not be entitled to compensation under the Court of Appeals' interpretation of "new evidence"; the *in camera* review would be a proceeding that led to their conviction. But a defendant who never made a pretrial motion because they learned of the suppressed evidence *after* their conviction would be eligible

12

for compensation. Both cases are examples of wrongful convictions, because the evidence was improperly kept from the jury when it decided the defendant's guilt. Denying compensation in the first case because the evidence is not "new" would frustrate the Legislature's stated intent to compensate people who were convicted and imprisoned for "crimes that [they] did not commit." MCL 691.1753.

Whether to provide compensation for wrongful imprisonment and who is entitled to that compensation are policy questions for the Legislature to decide—not this Court. And we have recognized that WICA compensation isn't available for every wrongful conviction: "there are only so many dollars to fill the WICA bucket, after all, and the Legislature had to decide how best to allocate limited funding." *Ricks v Michigan*, ___ Mich ___, ___; ___ NW2d ___ (2021) (Docket No. 160657); slip op at 10. See also *Sanford*, 506 Mich at 17 (the WICA gives "a defined class of wrongfully imprisoned people a path to limited compensation"). But while the WICA offers limited compensation, there is no principled reason why plaintiffs who are otherwise similarly situated should be treated differently when exculpatory evidence was offered at a pretrial proceeding but not considered by the trier of fact.

The WICA doesn't make this distinction, so we can't. So long as the evidence was not presented at a proceeding where guilt was decided—that is, a trial or a hearing where a plea was entered—the WICA considers it "new."

## IV. CONCLUSION

Murphy's proposed testimony is new evidence under the WICA because it was not presented at a proceeding that adjudicated guilt. See *People v D'Angelo*, 401 Mich 167,

13

176; 257 NW2d 655 (1977) (a defendant's guilt or innocence "is irrelevant" to the entrapment determination). We therefore reverse the decision of the Court of Appeals and remand this case to that Court for further proceedings.

Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

14

DAVID A. MAPLES,

      Plaintiff-Appellant,

v

      No. 160740

STATE OF MICHIGAN,

      Defendant-Appellee.

---

ZAHRA, J. (*dissenting*).

I respectfully dissent from the majority's decision reversing the judgment of the Court of Appeals. At issue is whether plaintiff has presented "new evidence," as is required to establish a case for compensation under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*. I agree with the Court of Appeals that he has not. MCL 691.1752(b) provides, in pertinent part, that "new evidence" is "any evidence that was not presented in the proceedings leading to plaintiff's conviction . . . ." The evidence that plaintiff relies on in this WICA action was presented at a pretrial entrapment hearing in the criminal case against plaintiff that led to his guilty plea. Contrary to the majority's conclusion, "the proceedings leading to plaintiff's conviction" are not limited to a plea hearing or trial, but more broadly include all events or actions that, taken together, tend toward, result in, or cause the plaintiff's conviction. This necessarily includes pretrial hearings. The evidence proffered by plaintiff was therefore presented at "the proceedings leading to plaintiff's conviction" and cannot qualify as "new evidence" under MCL

691.1752(b), meaning his WICA claim fails. I dissent from the majority's contrary conclusion and would affirm the result of the Court of Appeals.[1]

## I. STANDARD OF REVIEW AND APPLICABLE PRINCIPLES OF STATUTORY INTERPRETATION

Whether plaintiff has proffered "new evidence" under the WICA presents an issue of statutory interpretation that we review de novo.[2] When reviewing questions of statutory interpretation, the role of the Court is to "ascertain the legislative intent that may reasonably be inferred from the words in a statute."[3] "The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent."[4] "When the statutory language is clear and unambiguous, judicial construction is limited to enforcement of the statute as written."[5]

---

[1] While the Attorney General has conceded in this Court that plaintiff has proffered "new evidence" under MCL 691.1752(b), this Court is not bound by that concession. See *People v Reed*, 449 Mich 375, 395; 535 NW2d 496 (1995). As Justice VIVIANO noted in his dissenting statement in *People v Altantawi*, 507 Mich ___, ___; 954 NW2d 518 (2021) (VIVIANO, J., dissenting), citing *Young v United States*, 315 US 257, 258-259; 62 S Ct 510; 86 L Ed 832 (1942), "a prosecutor's confession of error 'does not relieve this Court of the performance of the judicial function,' and while the opinion of the prosecutor is entitled to some weight, 'our judicial obligations compel us to examine independently the errors confessed.' . . . The public interest in the 'proper administration of the criminal law cannot be left merely to the stipulation of parties.' " Because I disagree with and am not bound by the Attorney General's interpretation of the WICA in this case, I decline to adopt it.

[2] *Sanford v Michigan*, 506 Mich 10, 14; 954 NW2d 82 (2020).

[3] *Id*. at 14-15 (quotation marks and citation omitted).

[4] *Id*. at 15 (quotation marks and citation omitted).

[5] *Id*. (quotation marks and citation omitted).

2

## II. ANALYSIS

MCL 691.1755 sets forth the threshold requirements that a plaintiff must establish in order to receive compensation under the WICA:

> (1) In an action under this act, the plaintiff is entitled to judgment in the plaintiff's favor if the plaintiff proves all of the following by clear and convincing evidence:
>
> (a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.
>
> (b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. However, the plaintiff is not entitled to compensation under this act if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial.
>
> (c) New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial.

At issue is whether plaintiff has proffered "new evidence," as is required to satisfy MCL 691.1755(1)(c). The WICA defines "new evidence" as follows:

> "New evidence" means any evidence that was not presented in the proceedings leading to plaintiff's conviction, including new testimony, expert interpretation, the results of DNA testing, or other test results relating to evidence that was presented in the proceedings leading to plaintiff's conviction. New evidence does not include a recantation by a witness unless there is other evidence to support the recantation or unless the prosecuting attorney for the county in which the plaintiff was convicted or, if the department of attorney general prosecuted the case, the attorney general

3

agrees that the recantation constitutes new evidence without other evidence to support the recantation.[6]

The "new evidence" that plaintiff relies on is the testimony of James Murphy, who has averred that plaintiff had no involvement in the drug transaction that resulted in plaintiff's plea-based conviction of delivery of cocaine, a conviction that was reversed on appeal[7] and subsequently vacated. Murphy testified similarly at the February 1994 hearing on his entrapment motion, which plaintiff joined, in which Murphy sought dismissal of the criminal charges against him. Because Murphy already testified at the entrapment hearing, because Murphy's affidavit is substantively the same as his testimony at the entrapment hearing, and because plaintiff offers no additional new evidence,[8] the key question is whether Murphy's testimony at the February 1994 pretrial entrapment hearing was presented in "the proceedings leading to plaintiff's conviction" for purposes of MCL 691.1752(b). If so, then Murphy's testimony cannot constitute "new evidence" to satisfy MCL 691.1752(b) and MCL 691.1755(1)(c). The majority concludes that Murphy has presented "new evidence" because only a plea hearing or trial, not a pretrial hearing, can constitute "the proceedings leading to plaintiff's conviction." I disagree.

To resolve this case, we must reasonably construe the phrase "the proceedings leading to plaintiff's conviction" as used in MCL 691.1752(b). The WICA does not define

---

[6] MCL 691.1752(b).

[7] *Maples v Stegall*, 427 F3d 1020 (CA 6, 2005).

[8] I agree with the majority that Roberts's purported testimony is not "evidence" at all given that plaintiff has not presented an affidavit or other offer of proof supporting the existence of that testimony. It therefore cannot qualify as "new evidence" for purposes of MCL 691.1752(b).

4

the terms "proceedings" or "leading to," so I turn to dictionary definitions of these terms.[9]

In concluding that pretrial hearings do not constitute "proceedings leading to plaintiff's conviction," the majority first cites the definition used by the Court of Appeals for a "criminal proceeding," which is "[a] judicial hearing, session, or prosecution in which a court adjudicates whether a person has committed a crime or, having already fixed guilt, decides on the offender's punishment; a criminal hearing or trial."[10] But reliance on this definition is misplaced because MCL 691.1752(b) uses the term "proceedings," not "criminal proceeding." Because "proceedings" is a legal term of art, consulting legal dictionaries is appropriate.[11] *Black's Law Dictionary* (11th ed) defines "proceeding," in

---

[9] " 'An undefined statutory term must be accorded its plain and ordinary meaning.' " *Sanford*, 506 Mich at 21 n 19, quoting *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008), citing MCL 8.3a. " 'A lay dictionary may be consulted to define a common word or phrase that lacks a unique legal meaning.' " *Sanford*, 506 Mich at 21 n 19, quoting *Brackett*, 482 Mich at 276. In contrast, "[a] legal term of art is a technical word or phrase that has acquired a particular and appropriate meaning in the law." *People v Law*, 459 Mich 419, 425 n 8; 591 NW2d 20 (1999). See also MCL 8.3a. "[A] legal term of art 'must be construed in accordance with its peculiar and appropriate legal meaning.' " *Sanford*, 506 Mich at 21 n 19, quoting *Brackett*, 482 Mich at 276, citing MCL 8.3a. "Courts should ordinarily use a dictionary that is contemporaneous with the statute's enactment." *Sanford*, 506 Mich at 21 n 19, citing *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 563 n 58; 886 NW2d 113 (2016). Given that the WICA was enacted only four years ago, online dictionaries prove useful in interpreting the terms used in the act, as they easily describe how terms have been used in the last several years.

[10] *Black's Law Dictionary* (10th ed).

[11] I conclude that "proceedings" is a term of art because lay dictionaries consistently refer to "proceedings" generally as a "legal action," suggesting that the term, as used in this context, is specific to the legal context. See *New Oxford American Dictionary* (3d ed) (defining "proceedings" in a legal context as "action taken in a court to settle a dispute: *criminal proceedings were brought against him*"); *Webster's New World College Dictionary* (4th ed) ("legal action" or "the taking of legal action"); *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining the singular "proceeding" as a "legal action," i.e.,

5

pertinent part, as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and as "[a]n act or step that is part of a larger action."[12]  Merriam-Webster's online legal dictionary defines "proceeding," in pertinent part, as "a particular step or series of steps in the enforcement, adjudication, or administration of rights, remedies, laws, or regulations," including "an action, hearing, trial, or application before the court," and as "a criminal prosecution or

"a divorce proceeding"); Cambridge Dictionary, *Proceedings* <https://dictionary.cambridge.org/us/dictionary/english/proceedings> (accessed June 28, 2021)> [https://perma.cc/M42Y-QFHB] ("legal action"; for example, "*Allegations of sexual harassment have led to disciplinary proceedings being taken against three naval officers*"; and "*I started legal proceedings to try to have him taken away from his parents permanently*") (emphasis omitted); Macmillan Dictionary, *Proceedings* <https://www.macmillandictionary.com/us/dictionary/american/proceedings> (accessed June 28, 2021) [https://perma.cc/NGX8-M7SC] (defining "proceedings" as a legal term meaning "the actions taken, usually in court, to settle a legal matter") (emphasis omitted).

[12] *Black's Law Dictionary* (11th ed) also contains the following commentary on the term:

> "Proceeding" is a word much used to express the business done in courts.  A proceeding in court is an act done by the authority or direction of the court, express or implied.  It is more comprehensive than the word 'action,' but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment.  As applied to actions, the term 'proceeding' may include — (1) the institution of the action; (2) the appearance of the defendant; (3) all ancillary or provisional steps, such as arrest, attachment of property, garnishment, injunction, writ of *ne exeat*; (4) the pleadings; (5) the taking of testimony before trial; (6) all motions made in the action; (7) the trial; (8) the judgment; (9) the execution; (10) proceedings supplementary to execution, in code practice; (11) the taking of the appeal or writ of error; (12) the *remittitur*, or sending back of the record to the lower court from the appellate or reviewing court; (13) the enforcement of the judgment, or a new trial, as may be directed by the court of last resort. [Quoting Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3–4 (2d ed, 1899) (quotation marks omitted).]

6

investigation[.]"[13]  These definitions do not restrict "proceedings" to the final guilty plea

hearing or trial in a criminal case at which guilt is ultimately determined.  To the contrary,

they contemplate a broader, more expansive understanding of the term that also

encompasses the other events and actions prior to the conviction; this broader

understanding certainly includes a pretrial hearing.[14]  After all, a pretrial hearing is part of

the "regular and orderly progression of a lawsuit" and constitutes an event between the

commencement of an action and the entry of judgment.  It is surely one of the "series of

steps" in a criminal prosecution.[15]  The statute's use of the plural "proceedings" rather than

the singular "proceeding" further supports this interpretation, as the term "proceedings"

contemplates multiple events or actions and is not limited to the singular proceeding of a

plea hearing or trial.[16]

---

[13] Merriam-Webster.com Dictionary, *Proceeding* <https://www.merriam-webster.com/dictionary/proceeding#legalDictionary> (accessed June 28, 2021) [https://perma.cc/C5BU-ES99].

[14] The commentary provided by *Black's Law Dictionary* (11th ed) supports this interpretation in that it refers to the word "proceeding" as a "comprehensive" term that "may include in its general sense *all* the steps taken or measures adopted in the prosecution or defense of an action, *including the pleadings and judgment*." (Emphasis added.) Pretrial hearings clearly fall within this description.

[15] While labeling "proceedings" a legal term of art as used in this context is seemingly noncontroversial given that neither the majority nor the parties have relied on a lay definition of the term, I submit that a pretrial hearing would fall under the lay definitions of the term as well because such hearings are certainly part of a "legal action."

[16] The majority focuses heavily on the Legislature's use of the word "the" instead of "any" before "proceedings," interpreting this as a signal of the Legislature's intent to use the term "proceedings" narrowly.  But even if the word "the" was used to limit "proceeding," a conclusion that I do not find obvious, the Legislature immediately negated any narrowing effect by using the plural form of the word "proceedings."  In my view, it is not the word

While the meaning of "proceedings" is expansive, that word precedes the modifying phrase "leading to plaintiff's conviction." It is only evidence presented at the proceedings "leading to plaintiff's conviction" that is excluded from constituting "new evidence." Unlike the term "proceedings," "leading to" does not have a definition specific to the legal field, so consulting lay dictionaries to ascertain the meaning of the term is appropriate. The *New Oxford American Dictionary* defines "lead to" in this context as "culminate in (a particular event): *closing the plant will lead to the loss of 300 jobs*."[17] *Merriam-Webster's Collegiate Dictionary* defines the term as "to tend toward or have a result," as in, "study *leading* to a degree[.]"[18] Merriam-Webster's online dictionary defines "lead to" as "to result in (something)."[19] The examples provided include, "[A] course of study *leading* to a degree in agriculture"; "Her investigations ultimately *led* to the discovery of the missing documents"; and "His volunteer work in the hospital *led* to a career in nursing."[20] The Cambridge online dictionary defines "lead" as "to prepare the way for something to happen; cause" and gives the example, "*Ten years of scientific research led to the*

---

"the" before "proceedings" that does the limiting work in MCL 691.1752(b), but the subsequent phrase "leading to plaintiff's conviction."

[17] *New Oxford American Dictionary* (3rd ed).

[18] *Merriam-Webster's Collegiate Dictionary* (11th ed). See also *Webster's New World College Dictionary* (4th ed) (defining "lead" as "to be or form a way (*to*, *from*, *under*, etc.); tend in a certain direction; go").

[19] Merriam-Webster.com Dictionary, *Lead to* <https://www.merriam-webster.com/dictionary/lead%20to> (accessed June 29, 2021) [https://perma.cc/9ZAE-V7TB].

[20] *Id*.

8

*development of the new drug.*"[21] Lastly, the Macmillan online dictionary defines "lead to" as "to begin a process that causes something to happen," as in: "*There is no doubt that stress can lead to physical illness*"; and "[*A*] *process of negotiation leading to a peaceful settlement*[.]"[22]

These definitions belie the majority's conclusion that the modifying phrase "leading to plaintiff's conviction" limits the aforementioned "proceedings" to the final, singular proceeding that results in a determination of guilt, i.e., the plea hearing or trial. Under its plain meaning, "lead to" means to "culminate in," "tend toward or have a result," "to result in something," or "to begin a process that causes something to happen." The majority itself similarly defines this term as to "tend toward," "have a result," or "cause." None of those definitions is so restrictive to suggest that "lead to" references only the single, immediate event that most directly results in the end product—here, the conviction. Instead, these definitions more sweepingly include the series of events that "tends toward" or "results in" the conviction. Many of the usage examples confirm this expansive interpretation.[23]

---

[21] Cambridge Dictionary, *Lead* <https://dictionary.cambridge.org/us/dictionary/english/lead> (accessed June 29, 2021) [https://perma.cc/SKJ8-636L] (emphasis omitted).

[22] Macmillan Dictionary, *Lead to* https://www.macmillandictionary.com/us/dictionary/american/lead-to (accessed June 29, 2021) [https://perma.cc//XR6R-4M3L] (emphasis omitted).

[23] For instance, the example of "study leading to a degree" would include not just the studying required to pass the last set of final exams, but also the studying required to pass all previous courses that contributed to the earning of the degree. A "process of negotiation leading to a peaceful settlement" would not be limited to only the final successful agreement, but would include preliminary discussions and prior rejected offers. The usage examples therefore indicate that "leading to" encompasses all events that ultimately result in the conclusion.

Thus, the definitions of both "proceedings" and "leading to" are broad, and when read together, they simply do not support the majority's conclusion that "proceedings leading to plaintiff's conviction" refers only to the one event that most directly results in plaintiff's conviction. Rather, "proceedings leading to plaintiff's conviction" as used in MCL 691.1752(b) refers to all events or actions that tend toward, result in, or cause the plaintiff's conviction, not the singular final event of the plea hearing or trial. This necessarily includes pretrial hearings, including those pertaining to the admissibility of evidence or the viability of defenses; such hearings "tend toward" or "result in" a conviction by causing the case to be directed toward the conviction, as opposed to another direction.[24] These proceedings contribute to the conviction, regardless of whether each individual proceeding can independently establish guilt. The evidence and defenses (or lack thereof) presented at these pretrial proceedings shape the criminal prosecution against the accused and collectively culminate or result in a conviction. Further, as described above, because "proceedings" is used in the plural rather than the singular, it contemplates that there are multiple events or actions that, when taken together, result in the conviction.

---

[24] Of course, we are approaching the case in the context of a plaintiff who has been wrongfully convicted, meaning that he or she was convicted in the first place. If a pretrial hearing results in the dismissal of charges, we would have no reason to discuss the WICA.

In taking a hardline stance that no pretrial hearing can constitute a proceeding leading to a conviction, the majority accuses the Court of Appeals of applying a type of "but for" causation analysis. In making this accusation, the majority suggests there can only be one "cause" of a conviction. Such a narrow interpretation is simply not supported by the words used by the Legislature, which, as discussed above, contemplate a series of actions or events leading to a conviction. It is only by taking an overly narrow stance that the majority can conclude that a pretrial hearing, even one that led to plaintiff's decision to plead guilty, cannot tend toward a conviction.

10

For these reasons, I conclude that a pretrial hearing is indeed a proceeding that leads toward a plaintiff's conviction, and I disagree with the majority's holding that evidence presented in such pretrial hearings can constitute "new evidence" for purposes of the WICA.[25]

In awarding plaintiff compensation, it is the majority who expands the statute to make distinctions that the statute does not itself make. No language in the WICA defines "new evidence" as "evidence that was not admitted at the plea hearing or trial" or "evidence that was not presented to the jury." The Legislature easily could have chosen these definitions if that is what it intended.[26] Having specified which proceedings are relevant— "proceedings leading to a conviction"—the Legislature did not restrict them further by limiting them only to proceedings in which guilt was determined.

---

[25] Contrary to plaintiff's assertion, this interpretation does not render nugatory the words "leading to plaintiff's conviction" in MCL 691.1752(b). The "leading to plaintiff's conviction" modifier restricts the proceedings to those in plaintiff's criminal prosecution. It excludes related civil proceedings or other criminal proceedings unrelated to the prosecution that ultimately results in plaintiff's conviction at issue. It likely even excludes postconviction proceedings, such as sentencing or appellate proceedings, as the limitation of "leading to plaintiff's conviction" would suggest that only the evidence presented *before* the conviction should be considered. Thus, the "leading to plaintiff's conviction" language is significant under this interpretation. And it is for these same reasons that I disagree with the majority that the Court of Appeals' interpretation does not contain "any limiting principle."

[26] For similar reasons, I am not persuaded by the majority's observation that the Legislature would have used the well-established term "newly discovered evidence" rather than "new evidence" had it wanted to exclude evidence that was known at the time of trial from the definition of "new evidence" in MCL 691.1752(b). That the Legislature could have used that phrase does not impact our reading of the words it actually chose, which are much broader than the majority suggests. Rather than importing the term "newly discovered evidence" from other contexts, the Legislature explicitly defined the term "new evidence" to broadly include "the proceedings leading to plaintiff's conviction."

11

Finally, the majority says that its interpretation comports with the "remedial purpose" of the WICA. But this Court has declined to rely on the remedial nature of the WICA to "place a thumb on the scale in favor of one party over the other," instead making clear that "this Court will take a reasonable-construction approach in giving meaning to the unambiguous language of the WICA."[27] It is therefore unnecessary to refer to the purpose of the WICA in this case because, as is demonstrated above, the plain language of the statute clearly supports the conclusion that "new evidence" does not include evidence presented in pretrial hearings. I decline to expand the state's waiver of sovereign immunity beyond the conditions set forth by the Legislature in the WICA.[28]

Applying the above understanding, plaintiff has not proffered "new evidence" for purposes of MCL 691.1752(b). Plaintiff joined the entrapment hearing at which Murphy offered the pertinent testimony. The evidence was therefore introduced not just in Murphy's pretrial hearing, but in plaintiff's pretrial hearing as well. For the reasons discussed above, such a pretrial proceeding is a "proceeding leading to plaintiff's conviction." By joining the entrapment hearing, plaintiff asserted a defense that, if granted, would have resulted in the dismissal of all charges. The trial court instead denied the motion and allowed the case to proceed to trial, bringing plaintiff's case closer to a conviction. The pretrial entrapment hearing was one proceeding in the series of proceedings that resulted in plaintiff's decision to plead guilty. Accordingly, because

---

[27] *Sanford*, 506 Mich at 18.

[28] See *DiBenedetto v West Shore Hosp*, 461 Mich 394, 405; 605 NW2d 300 (2000) (Courts may not "rewrite the plain statutory language and substitute our own policy decisions for those already made by the Legislature.").

plaintiff seeks to admit the same testimony that was presented during a "proceeding leading to [his] conviction," I agree with the Court of Appeals that Murphy's testimony is not "new evidence" for purposes of the WICA.

## III. CONCLUSION

I disagree with the majority's holding that "the proceedings leading to plaintiff's conviction" as used in MCL 691.1752(b) are limited to a plea hearing or trial. "Proceedings" is a broad term that encompasses all actions and events that occur in a plaintiff's criminal prosecution, which necessarily includes pretrial hearings. "Leading to" does not limit the "proceedings" to the plea hearing or trial where guilt is definitively determined. Rather, it refers to those actions or events that collectively result in the conclusion of the proceedings, i.e., plaintiff's conviction. With this understanding, plaintiff has not presented "new evidence" for purposes of MCL 691.1752(b), because the evidence he claims as "new" was presented at his pretrial entrapment hearing, which was one of the proceedings leading to his conviction. Because plaintiff has not presented "new evidence," his WICA claim fails under MCL 691.1755(1)(c). I would affirm the result reached by the Court of Appeals. Because the majority reverses that judgment, I dissent.

Brian K. Zahra
David F. Viviano

13