*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

DEVAN BRIE GREEN,

        Plaintiff-Appellant,

v

PONTIAC PUBLIC LIBRARY, MATTIE
MCKINNEY HATCHETT, MELANIE
RUTHERFORD, HOLBERT MAXEY, and ROSIE
RICHARDSON,

        Defendants-Appellees.

FOR PUBLICATION
March 7, 2024
9:05 a.m.

No. 363459
Oakland Circuit Court
LC No. 2021-189217-CD

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

GADOLA, P.J.

Plaintiff, Devan Brie Green, appeals as of right the trial court's order granting defendants summary disposition under MCR 2.116(C)(10) of her complaint alleging that defendants violated the Whistleblowers' Protection Act (WPA), MCL 15.369 *et seq.*, and engaged in a civil conspiracy. Plaintiff also challenges the trial court's order denying her motion to amend her complaint to include allegations that defendants violated the Open Meetings Act (OMA), MCL 15.261 *et seq.*, and the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.* We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

## I. FACTS

Defendants are the Pontiac Public Library (the library) and four members of the library's Board of Trustees (the board), Mattie McKinney Hatchett, Melanie Rutherford, Holbert Maxey, and Rosie Richardson. The library hired plaintiff in July 2009, and she served as Executive Director of the library from January 1, 2014, to June 10, 2021.

In January 2021, representatives of Community Cuisine, LLC (Community Cuisine), approached the board with a proposal to lease the library's kitchen, outdoor pavilion, and 10 parking spaces for a private venture in which Community Cuisine would arrange for food vendors, including Pontiac Farmers Market, LLC, to use the space for sale of food to the public. Community Cuisine proposed that they would lease the facility from the library for $400 per month for two

years. To facilitate the undertaking, Community Cuisine proposed that the library provide $30,000 to purchase kitchen equipment and make improvements to the library's kitchen and pavilion. Community Cuisine was led by Angelo Taylor, the godson of defendant Hatchett, the board chair.

In March 2021, the board authorized the expenditure of $30,000 and directed plaintiff to send the proposed lease to the library's attorney for review; the attorney recommended adding insurance requirements to the lease. The lease was signed by Community Cuisine on April 9, 2021, but was never signed by a representative of the library. On April 29, 2021, defendant Hatchett directed plaintiff to use the library's debit card to purchase the equipment requested by Community Cuisine. Plaintiff did so, and the equipment arrived on May 4, 2021.

At a board meeting on May 6, 2021, representatives of Community Cuisine requested that the library also provide more than $117,000 in additional start-up funds. Defendants Hatchett, Richardson, and Maxie expressed willingness to fund the project up to $100,000. Two days later, after discussing the matter with board Vice Chair Perry Earl, plaintiff contacted the library's attorney and requested a legal opinion regarding the use of public funds for the Community Cuisine venture. The attorney responded with an opinion stating that the board could not provide public funds for the Community Cuisine venture and could use public funds to make improvements to the library property only for library purposes; the attorney provided a second opinion regarding conducting a closed session to discuss legal advice from the board's attorney. Plaintiff gave both opinions to Hatchett, who instructed plaintiff to schedule a board meeting for May 17, 2021.

A public notice of the May 17, 2021 special meeting indicated that the board would meet "online via Zoom and Facebook Live" to "discuss a Personnel Matter and Attorney Correspondence." At the conclusion of the public session, Hatchett instructed plaintiff to terminate the Zoom and Facebook feeds and to leave the room, thereby preventing two trustees who were attending remotely from participating in the closed session that followed. At a board meeting on May 27, 2021, the trustees present at the May 17, 2021 closed session voted to terminate plaintiff's employment as library director. The two trustees who were prevented from attending the May 17, 2021 closed session voted against terminating plaintiff's employment.

On July 27, 2021, plaintiff initiated this action, alleging that defendants violated the WPA by terminating her employment because she sought a legal opinion regarding the appropriateness of the board's use of public funds to finance Community Cuisine's private venture. Plaintiff also alleged that defendants engaged in a civil conspiracy to use public funds in a private venture and to fire her from her position as Executive Director of the library.

On September 29, 2021, plaintiff moved for leave to amend her complaint to add two additional counts alleging violation of the OMA and the ELCRA. The trial court denied the motion to amend without prejudice to plaintiff revising the proposed amendment. Plaintiff thereafter filed a second motion to amend her complaint to add the claims. Plaintiff alleged that the individual defendants intentionally violated the OMA by discussing the termination of her employment in a closed session that she had not requested, discussing matters other than the legal opinion letter at the closed session, preventing two trustees from attending the closed session by cutting their electronic feed, failing to create minutes of the closed session, and agreeing to terminate plaintiff's employment on May 27, 2021. Plaintiff also alleged that defendants Maxey and Rutherford violated the ELCRA by terminating her employment on the basis of her marital status; plaintiff

-2-

asserted that at the May 27, 2021 meeting one of the factors discussed as supporting termination of her employment was the allegation that her husband threatened a board member.

The trial court denied plaintiff's second motion to amend her complaint. The trial court found that the proposed OMA claim did not relate back to the filing of the original complaint and therefore was time-barred under the OMA, rendering the proposed amendment futile. The trial court further held that plaintiff's claim under the ELCRA was futile because it did not demonstrate that plaintiff's employment was terminated on the basis of marital status. The trial court thereafter denied plaintiff's motion for reconsideration.

Defendants moved for summary disposition under MCR 2.116(C)(10), contending that the undisputed facts did not set forth a claim under the WPA. The trial court granted defendants' motion, finding that when plaintiff contacted the library's attorney on May 8, 2021, she was not engaged in protected activity as contemplated by the WPA because plaintiff requested an opinion from the library's attorney regarding actions that were being considered by the board, but which had not yet occurred. The trial court further found that because a claim of civil conspiracy requires proof of a separate, actionable tort, the failure of plaintiff's WPA claim entitled defendants to judgment as a matter of law regarding plaintiff's civil conspiracy claim. Plaintiff now appeals.

## II. DISCUSSION

### A. MOTION TO AMEND

Plaintiff contends that the trial court erred when it denied her second motion to amend her complaint to add claims that defendants violated the OMA and the ELCRA. We review a trial court's decision to grant or deny leave to amend pleadings for an abuse of discretion, which occurs when a trial court's decision is outside the range of principled outcomes, *Twp of Grayling v Berry*, 329 Mich App 133, 151; 942 NW2d 63 (2019), or when the trial court makes an error of law, *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). We review de novo the interpretation of statutes and court rules, *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 71; 903 NW2d 197 (2017), and also whether a proposed amendment relates back to the original complaint, which is a question of law, *Doyle v Hutzel Hosp*, 241 Mich App 206, 212; 615 NW2d 759 (2000). Likewise, where the facts are undisputed, whether a cause of action is barred by an applicable period of limitation is a question of law reviewed de novo. *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 386; 738 NW2d 664 (2007).

MCR 2.118(A) provides, in relevant part:

(1) A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading.

(2) Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

-3-

Thus, a party seeking to amend a pleading outside of the time period set forth in MCR 2.118(A)(1) may only do so with the consent of the opposing party or by leave of the trial court. MCR 2.118(A)(2). The trial court is directed to "freely" grant leave to amend a pleading "when justice so requires." MCR 2.118(A)(2). Leave to amend is generally a matter of right and should ordinarily be denied only for particularized reasons, including undue delay, bad faith, dilatory motive, or futility. *Bennett v Russell*, 322 Mich App 638, 647; 913 NW2d 364 (2018). An amendment is futile when (1) ignoring the substantive merits of the claim, it is legally insufficient on its face, (2) the amendment merely restates an allegation already stated, or (3) the court lacks jurisdiction over the added claim. *PT Today, Inc v Comm'r of the Office of Fin & Ins Serv*, 270 Mich App 110, 143; 715 NW2d 398 (2006). In addition, if the trial court grants summary disposition under MCR 2.116(C)(8), (9), or (10), the trial court must give the parties the opportunity to amend their pleadings pursuant to MCR 2.118 "unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5); *Jawad A. Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018).

## 1. OPEN MEETINGS ACT

In this case, plaintiff sought leave to amend her complaint to add a claim that defendants violated the OMA by terminating her employment on May 27, 2021, after meeting in closed session to discuss the issue on May 17, 2021. The trial court denied plaintiff leave to amend her complaint to add the claim, holding that the proposed amendment was futile because plaintiff's claim under the OMA was time-barred.

Under the OMA, meetings of a public body generally must be open to the public, and all decisions of a public body must be made at a meeting open to the public. MCL 15.263(1), (2). Although a public body may meet in closed session, MCL 15.267(1), a closed session may be held only for limited purposes, including discussion of the discipline or dismissal of a public employee, but only if the employee requests a closed hearing. MCL 15.268(1)(a). A separate set of minutes of the closed session must be prepared and may not be disclosed unless required in a civil action filed under the act. MCL 15.267(2).

If a public body fails to comply with the requirements of the OMA, a private litigant may seek relief by filing an action in the circuit court to invalidate a decision of a public body, MCL 15.270(1), to compel compliance or enjoin future noncompliance with the act, MCL 15.271, and to seek damages against a public official who intentionally violates the act. MCL 15.273. Under MCL 15.270(3)(a), an action seeking to invalidate a decision of a public body for violation of the OMA must filed within 60 days after the approved minutes of the meeting are made available to the public by the public body. That statutory section provides:

> (3) The circuit court shall not have jurisdiction to invalidate a decision of a public body for a violation of this act unless an action is commenced pursuant to this section within the following specified period of time:
>
> (a) Within 60 days after the approved minutes are made available to the public by the public body . . . . [MCL 15.270(3)(a).]

In this case, the parties do not dispute that the approved minutes of the library board's May 27, 2021 public meeting were made available June 21, 2021,[1] and plaintiff filed her original complaint July 27, 2021. Plaintiff's original complaint was thus timely filed under MCL 15.270.

MCR 2.118(D) sets forth what is referred to as the "relation-back" doctrine:

An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading. . . .

The relation-back doctrine was developed by the courts to avoid preclusion by a statute of limitations of an issue raised in an amended pleading by relating the amended claim or defense with the date of the original pleading. *LaBar v Cooper*, 376 Mich 401, 405; 137 NW2d 136 (1965). Under the relation-back doctrine, an "amended pleading can introduce new facts, new theories, or even a different cause of action as long as the amendment arises from the same transactional setting that was set forth in the original pleading." *Doyle*, 241 Mich App at 212-213. "The principle to be gleaned . . . is the necessity for a broadly focused inquiry regarding whether the allegations in the original and amended pleadings stem from the same general 'conduct, transaction, or occurrence.' " *Id.* at 219. Thus, if the cause of action presented in a proposed amendment arises from the same "transactional setting" as the original complaint, it relates back to the original complaint, regardless whether the proposed amendment introduces new facts, a new theory, or a different cause of action. *Id.*

Here, plaintiff alleged in her original complaint that the individual defendants violated the WPA by terminating her employment because she sought a legal opinion regarding the board's conduct. In her second proposed amended complaint, plaintiff asserted that defendants also violated the OMA by terminating her employment, specifically, by deciding to terminate her employment at a closed session of the board on May 17, 2021, preventing two board members from attending that session, failing to create minutes of the closed session, and thereafter voting to terminate her employment at the May 27, 2021 open session.

The trial court found that plaintiff's claim under the OMA did not relate back to the original complaint because it presented a separate and distinct claim that required plaintiff to prove a different set of facts from those of plaintiff's original complaint. As discussed, however, an "amended pleading can introduce new facts, new theories, or even a different cause of action as long as the amendment arises from the same transactional setting that was set forth in the original pleading." *Doyle*, 241 Mich App at 212-213. Here, plaintiff's claim under the WPA and the OMA both arise from defendant's decision to terminate plaintiff's employment on May 27, 2021, after she alerted the library's attorney that the board was funding a private venture. Applying a "broadly

---

[1] The minutes of the closed session apparently never were approved by the board. See *Lockwood v Twp of Ellington*, 323 Mich App 392, 403-404; 917 NW2d 413 (2018) (reasoning that the 60-day period had never commenced because the minutes of a public meeting were neither approved nor made available to the public).

focused inquiry," plaintiff's claim under the OMA arises from the same "transactional setting" as plaintiff's claim of a WPA violation alleged in the original complaint, namely, defendants' decision to terminate plaintiff's employment at the May 27, 2021 meeting. Plaintiff's OMA claim therefore relates back to the filing of the original complaint. See MCR 2.118(D); see also *Doyle*, 241 Mich App at 219. Because plaintiff's claim under the OMA relates back to plaintiff's original complaint, it was not time-barred, and therefore the amendment to add the claim is not futile on that basis. The trial court therefore abused its discretion by denying plaintiff leave to amend her complaint to allege violation of the OMA.

Defendants argue that the trial court's denial of leave to amend nonetheless should be affirmed because, regardless of whether they decided to terminate plaintiff's employment at the May 17, 2021 closed session, they cured any possible violation of the OMA under MCL 15.270(5) by reenacting that decision at the May 27, 2021 public meeting. However, reenactment of a decision under MCL 15.270(5) does not affect the liability of a public official for an intentional violation of the OMA. *Leemreis v Sherman Twp*, 273 Mich App 691, 701-702; 731 NW2d 787 (2007). Because plaintiff's amended complaint alleges intentional violations of the OMA, the trial court's decision to deny plaintiff leave to amend to allege intentional violation of the OMA is not supported on that basis.

## 2. ELLIOTT-LARSEN CIVIL RIGHTS ACT

Plaintiff also contends that the trial court abused its discretion by denying her leave to amend her complaint to add a claim alleging that defendants violated the ELCRA. At the times relevant to this case, the ELCRA provided that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a). Although the act does not define "marital status," with regard to alleged marital status discrimination, "[t]he relevant inquiry is *if* one is married rather than *to whom* one is married." *Miller v C A Muer Corp*, 420 Mich 355, 361-362; 362 NW2d 650 (1984). In *Miller*, the Court considered whether anti-nepotism policies that restricted the employment of relatives, including spouses, violated the act. The Court explained that the aim of the ELCRA is to "prevent discrimination against a person because of stereotyped impressions about the characteristics of a class to which the person belongs," and that the Legislature intended to prohibit discrimination on the basis of "*whether* a person is married." *Id.* at 362-363. See also *Veenstra v Washtenaw Country Club*, 466 Mich 155, 161; 645 NW2d 643 (2002) (Concluding that "[t]he clear, unambiguous language of the statute protects status, not conduct").

In this case, the trial court concluded that plaintiff's claim that defendants fired her based upon her husband's conduct did not set forth a claim of marital status discrimination. We agree. Again, "the relevant inquiry is *if* one is married rather than *to whom* one is married," *Miller*, 420 Mich at 362. Because plaintiff's proposed claim for marital status discrimination was premised solely on her allegation that she was fired because of her husband's alleged conduct, her proposed claim was futile and the trial court did not abuse its discretion by denying plaintiff leave to amend her complaint to add a claim under the ELCRA.

## B. SUMMARY DISPOSITION

Plaintiff contends that the trial court erred by granting defendants summary disposition of her complaint under MCR 2.116(C)(10). We review de novo the trial court's decision to grant or deny a motion for summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We also review de novo whether the evidence establishes a prima facie case of retaliation under the WPA, which is a question of law. *Rivera v SVRC Indus, Inc*, 327 Mich App 446, 453; 934 NW2d 286 (2019), reversed in part on other grounds, 507 Mich 962 (2021).

## 1. WHISTLEBLOWERS' PROTECTION ACT

The WPA prohibits an employer from taking adverse employment action against an employee who reports, or is about to report, a violation or suspected violation of law to a public body, verbally or in writing. MCL 15.362; *Pace v Edel-Harrelson*, 499 Mich 1, 6; 878 NW2d 784 (2016). The underlying purpose of the WPA is the protection of the public. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378; 563 NW2d 23 (1997). "The act meets this objective by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law." *Id*. at 378-379. Because the WPA is a remedial statute, it must be liberally construed to favor those whom the Legislature sought to protect. *Chandler v Dowell Schlumberger, Inc*, 456 Mich 395, 406; 572 NW2d 210 (1998).

The plaintiff may rely upon either direct or indirect evidence of retaliation to establish a prima facie case under the WPA. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 17; 891 NW2d 528 (2016) (*McNeill-Marks I*). If the plaintiff establishes a prima facie case, there is a presumption of retaliation, which the employer may rebut by offering a legitimate reason for its action. A plaintiff may still avoid summary disposition, however, by showing that a reasonable finder of fact could conclude that the reason offered by the defendant is a pretext for unlawful adverse employment action. *Id*. at 17-18.

To establish a prima facie case under the WPA, a plaintiff must show that he or she was (1) engaged in protected activity as defined by the act, (2) was discharged or discriminated against, and that (3) a causal connection exists between the protected activity and the discharge or adverse employment action. *Pace*, 499 Mich at 6. A "protected activity" under the WPA is defined as reporting to a public body a violation of a law, regulation, or rule, being about to report to a public body such a violation, or being asked by a public body to participate in an investigation. *McNeill-Marks I*, 316 Mich App at 16.

In this case, the trial court granted defendants summary disposition of plaintiff's claim under the WPA on the basis that she was not engaged in a protected activity when she communicated her concerns to the library's attorney. The trial court found that plaintiff's May 8,

2021 request for a legal opinion from the library's attorney concerned "actions that were only being considered by the Board" and "conduct that may or may not occur in the future," and that therefore plaintiff had not engaged in a protected activity "under the plain language of MCL 15.362, as interpreted by the Supreme Court in *Pace*." In *Pace*, our Supreme Court stated that:

> The reference in MCL 15.362 to a 'violation or a suspected violation of law' plainly envisions an act or conduct that has actually occurred or is ongoing. . . . The provision must therefore be read in the context of some conduct or act that has already occurred or is occurring, and not some conduct or act that may or may not occur. MCL 156.362 contains no language indicating that future, planned, or anticipated acts amounting to a violation or a suspected violation of law are included within the scope of the WPA. [*Pace*, 499 Mich at 7-8.]

In this case, plaintiff reported a suspected violation that had occurred and that was ongoing. In her May 8, 2021 communication to the library's attorney, plaintiff stated in part:

> The library is being asked to fund the start up capital for a pair of for profit private companies Community Cuisine LLC and Pontiac Farmers Market LLC from its general fund. The board voted on a budget Amendment for $30,000 for Capital Improvements to cover Addendum A of the attached lease. . . . At a recent Special Meeting the companies requested additional capital from the Library. . . . The company is requesting over $117K.

Plaintiff thus informed the library's attorney that the board had provided $30,000 in funding for a private venture. Plaintiff later explained that on March 25, 2021, the board voted to amend the budget to add $30,000 for the Community Cuisine proposal, and thereby authorized purchases for the benefit of Community Cuisine, including flooring for the library kitchen, an oven and gas griddle, a sandwich prep table, a two-door freezer, and a large television. On April 29, 2021, defendant Hatchett directed her to use the library's debit card to purchase the equipment requested by Community Cuisine, which arrived on May 4, 2021. Plaintiff's communication to the library's attorney also reported that the board's conduct was ongoing, namely, that the board was considering additional use of public funds for the private venture. Unlike *Pace*, plaintiff's May 8, 2021 e-mail to the library's attorney in this case described "an act that has occurred or is ongoing," and conduct "that has already occurred or is occurring . . . ." *Pace*, 499 Mich at 7-8.

As discussed, the underlying purpose of the WPA is to protect the public by removing barriers that may discourage employees from reporting violations or suspected violations of law. *Dolan*, 454 Mich at 381. As a remedial statute, the WPA is liberally construed to favor the persons that the act is intended to protect. *Chandler*, 456 Mich at 406. The statutory construction of the WPA urged by defendants and applied by the trial court would require a plaintiff to defer reporting a violation or suspected violation of law until the act is complete. Because plaintiff reported existing and ongoing conduct, the trial court erred by granting defendants summary disposition of plaintiff's claim under the WPA.

On appeal, defendants assert that plaintiff's communication to the library's attorney was not a report to a public body under the WPA.[2] Our review of the record indicates that this issue was not raised before the trial court and the trial court did not determine this issue. As an error-correcting court, we decline to determine this issue in the first instance on appeal. See *Jawad A. Shah, MD, PC*, 324 Mich App at 194, 210. We similarly decline to reach defendants' additional arguments that plaintiff failed to establish causation and that they had a legitimate nondiscriminatory reason to terminate plaintiff's employment, which the trial court did not determine. See *id*.

## D. CIVIL CONSPIRACY

Plaintiff contends that the trial court erred by granting defendants summary disposition of her claim of civil conspiracy. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Swain v Morse*, 332 Mich App 510, 530; 957 NW2d 396 (2020) (quotation marks and citation omitted). A plaintiff alleging a civil conspiracy must prove

---

[2] In *McNeill-Marks I*, 316 Mich App at 21, 23-24, this Court determined that an attorney may qualify as a public body to whom a report may be made under the WPA. Our Supreme Court denied leave to appeal that determination, *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 502 Mich 851 (2018), and thereafter denied reconsideration, *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 503 Mich 854 (2018). This Court's determination in *McNeill-Marks I* was later called into question, however. This Court in *McNeill-Marks I* remanded the matter to the trial court, which granted the defendant summary disposition on the basis that the plaintiff's report to her attorney was not a report to a public body. This Court reversed the trial court's order on the basis of law of the case in light of this Court's earlier statement in *McNeill-Marks I* that a report to an attorney qualifies as a report to a public body under the WPA. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, unpublished per curiam opinion of the Court of Appeals, issued May 21, 2020 (Docket No. 348987); p 10 (*McNeill-Marks II*). The Supreme Court reversed the decision of this Court in *McNeill-Marks II*, holding that "the question whether the plaintiff's communication to her attorney satisfied the reporting requirement of MCL 15.362 was not actually decided" in the prior appeal, nor was it necessarily determined. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 508 Mich 937 (2021). On remand, this Court again considered whether the plaintiff's communication to her attorney satisfied the reporting requirement of MCL 15.362, concluding that under the facts of that case, the plaintiff did not make a report as envisioned by the WPA when she communicated with her personal attorney because she did not intend that any action be taken as a result. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, unpublished per curiam opinion of the Court of Appeals, issued February 10, 2022, (Docket No. 348987); p 4 (*McNeill-Marks III*). After hearing oral argument on the application, our Supreme Court denied leave to appeal. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, ___ Mich ___; 997 NW2d 443 (2023), and thereafter denied reconsideration. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, ___ Mich ___ (2024) (Docket No. 164302). Relatedly, our Supreme Court vacated this Court's holding in *Rivera*, 327 Mich App at 462-467, that the plaintiff's communication with the defendant's attorney was not a report to a public body under the WPA, stating that the holding was unnecessary to the resolution of that case. See *Rivera v SVRC Indus*, 507 Mich 962 (2021).

a separate, actionable tort as the basis of the conspiracy. *Mercurio v Huntington Nat'l Bank*, ___ Mich App __,___; ___ NW2d ___ (2023) (Docket No. 361855); slip op at 14. Our Supreme Court has described a tort in this context as "a civil wrong that arises from the breach of a legal duty other than the breach of a contractual duty." *In re Bradley Estate*, 494 Mich 367, 381; 835 NW2d 545 (2013).

In this case, plaintiff alleged that defendants violated the WPA, and that the four individual defendants conspired to fire her because she resisted their "unlawful efforts to use public funds for the benefit of private companies and the employees of said companies." The trial court granted summary disposition of plaintiff's civil conspiracy claim, reasoning that because her claim for violation of the WPA failed, plaintiff had not alleged a tort necessary to support a claim of civil conspiracy. Because we conclude that the trial court erred by dismissing plaintiff's claim under the WPA, we vacate the trial court's order dismissing plaintiff's claim of civil conspiracy to permit plaintiff the opportunity on remand to demonstrate a separate, actionable tort as the basis of the alleged conspiracy. See *Mercurio*, ___ Mich App at ___; slip op at 14.

We affirm the order of the trial court denying plaintiff leave to file an amended complaint to include a claim under the ELCRA. We reverse the order of the trial court denying plaintiff leave to amend her complaint to include a claim under the OMA, and reverse the trial court's order granting defendants summary disposition of plaintiff's claim under the WPA. We vacate the order of the trial court granting defendants summary disposition of plaintiff's civil conspiracy claim. We remand to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-10-